SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**Nowell James and Maryann James v. New Jersey Manufacturers Insurance Company** (A-26-12) (071344)

**Argued October 7, 2013 -- Decided February 3, 2014**

**LaVECCHIA, J., writing for a unanimous Court.**

In this appeal, the Court considers the retroactivity of N.J.S.A. 17:28-1.1(f), which prohibits the use of step-down provisions in an employer's commercial motor vehicle liability policy to provide less uninsured or underinsured motorist coverage (UM/UIM coverage) for employees than that which is provided to the "named insureds" on the policy.

On July 5, 2007, plaintiff Nowell James was driving a vehicle owned by his employer, Metric Plumbing and Heating, Inc. (Metric), and was significantly injured when another car struck the Metric vehicle. James settled with the owners of the other car for $100,000, the policy limit of their insurance. The Metric vehicle was insured under a policy issued on March 18, 2007, by defendant New Jersey Manufacturers Insurance Company (NJM). The policy included a $500,000 limit for UM/UIM coverage. Since the $100,000 James received in the settlement did not defray his medical costs, he sought UIM coverage at the $500,000 limit as an "insured" person under Metric's policy. However, the NJM policy contained a step-down provision capping the recovery of UIM benefits for unnamed insureds at the limit contained in James's own personal policy, or a policy by which he was covered as a family member. Since James was covered under his wife's policy, which had a UIM limit of $50,000, his maximum UIM recovery under the NJM policy was capped at $50,000. Because James had already received an amount in excess of $50,000 from his settlement, NJM denied his UIM claim.

On July 9, 2009, James filed suit against NJM, seeking UIM benefits under the policy issued to Metric. James partially relied upon N.J.S.A. 17:28-1.1(f), which provides that policies naming a corporate or business entity as the named insured, "shall be deemed to provide the maximum [UM/UIM] coverage available under the policy to an [employee] regardless of whether the [employee] is an additional named insured under that policy" or is covered under any other policy providing UI/UIM coverage. N.J.S.A. 17:28-1.1(f) was enacted into law, and made immediately effective, on September 10, 2007, five months after NJM issued its policy to Metric, and two months after James's motor vehicle accident.

NJM moved for summary judgment, arguing that N.J.S.A. 17:28-1.1(f) does not apply retroactively and that the policy's step-down provision remained applicable. The trial court granted summary judgment to NJM, finding that N.J.S.A. 17:28-1.1(f) did not retroactively bar the application of step-down provisions in employer motor vehicle liability policies in existence at the time of the law's enactment. James appealed, and the Appellate Division reversed in an unpublished opinion. The panel concluded that N.J.S.A. 17:28-1.1(f) reformed the NJM policy that was in existence when the amendment took effect, reasoning that the step-down provision was rendered unenforceable regardless of when during the life of the policy an accident involving an employee actually occurred. The Court granted NJM's petition for certification. 212 N.J. 460 (2012).

**HELD:** As of its effective date of September 10, 2007, N.J.S.A. 17:28-1.1(f) applied to and prospectively reformed, for employees, a corporation's or business entity's motor vehicle liability policy containing UM/UIM step-down provisions, including policies that were in force at that time. No exceptions to the rule favoring prospective application of new legislation pertain to N.J.S.A. 17:28-1.1(f) . Because James's accident preceded N.J.S.A. 17:28-1.1(f)'s effective date, his claims are governed by the provisions of the NJM policy that were in existence as of the date of his accident.

1. The Court's decision in Pinto v. New Jersey Manufacturers Insurance Co., 183 N.J. 405 (2005), upheld the validity of a step-down provision in an employer's motor vehicle liability policy with respect to UM/UIM benefits provided to an employee. On September 10, 2007, about two years after Pinto was decided, N.J.S.A. 17:28-1.1(f)

1

was enacted, reversing the effect of Pinto by prohibiting step-down provisions which limit UM/UIM coverage for employees in employer business motor vehicle insurance policies. In pertinent part, it provides that policies issued to corporate or business entities shall not provide less UM/UIM covered for an employee than the coverage provided to the named insured. Where a corporate or business entity is the named insured, the policy "shall be deemed to provide the maximum [UM/UIM] coverage available under the policy to an [employee] regardless of whether the [employee] is an additional named insured under that policy" or is covered under any other policy providing UI/UIM coverage. N.J.S.A. 17:28-1.1(f) took effect immediately upon enactment. (pp. 10-13)

2. In accordance with notions of fairness and due process, statutes should generally be given prospective application. In determining whether a statute could be applied retroactively, a court must first ask whether the Legislature intended to provide for retroactive application and then ask whether such application will result in manifest injustice or unconstitutional interference with vested rights. Three circumstances justify giving a statute retroactive effect: (1) when there is express or implicit legislative intent that it apply retroactively; (2) when it is curative, merely clarifying the legislative intent of a previous act without altering it in any substantial way; and (3) when warranted by the parties' expectations. Once it is determined that a statute is subject to retroactive application, an inquiry must be made as to the potential for manifest injustice to the adversely-affected party. (pp. 13-17)

3. The plain language of N.J.S.A. 17:28-1.1(f) is the Court's starting point in its retroactivity analysis. The clear language of the amendment's two operative sentences shows that step-down provisions are not entirely prohibited. N.J.S.A. 17:28-1.1(f) directs how employees must be treated in the presence of such provisions, but does not render them ultra vires in other settings, such as when a non-employee user of a corporate vehicle is injured by an uninsured or underinsured motorist. The statutory language is similarly explicit in identifying its effective date of September 10, 2007. Nothing in the plain language of the statute indicates an intended retroactive effect. When considered in conjunction with the operative sentences of the legislation, the natural and most straightforward application of the immediate effective date means that N.J.S.A. 17:28-1.1(f) reformed policies as of that date. Thus, only employees seeking coverage for accidents occurring after the effective date would be covered under reformed policies. This conclusion does not result in manifest injustice to insurers because they have no contractual expectation that the insurance regulatory scheme will remain unalterably fixed. (pp. 17-23)

4. The Court disagrees with the Appellate Division's conclusion in Hand v. Philadelphia Insurance Co., 408 N.J. Super. 124 (App. Div), certif. denied, 200 N.J. 506 (2009), in which it determined that the language of N.J.S.A. 17:28-1.1(f) evinced an implicit legislative intent to retroactively reform all commercial liability policies by eliminating step-down provisions in existence on the effective date of the new legislation and providing an immediate remedy for any claims pending as of that date. The Court reiterates that the plain language of N.J.S.A. 17:28-1.1(f) does not eliminate step-down provisions, instead simply thwarting implementation of such provisions for a certain class of insureds. As of the amendment's effective date, it began blocking the application of step-down provisions to those insureds and altered contract terms to provide a remedy. (pp. 23-25)

5. The Court has previously held that UM/UIM claims specifically arise at the time of the accident. As of the date of James's accident, Metric's policy with NJM had not yet been affected by N.J.S.A. 17:28-1.1(f), and the plain language of that amendment evinces no legislative intent for retroactive application. Additionally, the curative exception to the general rule favoring prospective application of statutes is inapplicable because N.J.S.A. 17:28-1.1(f) neither cured a judicial misinterpretation of the law nor clarified or expanded a preexisting statutory provision. Finally, since N.J.S.A. 17:28-1.1(f) was neither adopted nor effective at the time Metric's policy was issued or when James's accident occurred, NJM had a reasonable basis to believe its step-down provision was enforceable. Although employee UM/UIM claims involving accidents that occurred on or after the effective date of N.J.S.A. 17:28-1.1(f) are governed by that new law, James's UM/UIM claim is governed by the provisions of the NJM policy that were lawfully in existences as of the date of his accident. The Appellate Division erred in retroactively applying N.J.S.A. 17:28-1.1(f) to James's claim and reversing the trial court's award of summary judgment to NJM. (pp. 25-32)

The judgment of the Appellate Division is **REVERSED**.

**CHIEF JUSTICE RABNER, JUSTICES ALBIN and PATTERSON, and JUDGE CUFF (temporarily assigned) join in JUSTICE LaVECCHIA's opinion. JUDGE RODRÍGUEZ (temporarily assigned) did not participate.**

2

NOWELL JAMES and MARYANN
JAMES, his wife,

    Plaintiffs-Respondents,

        v.

NEW JERSEY MANUFACTURERS
INSURANCE COMPANY,

    Defendant-Appellant.

        Argued October 7, 2013 – Decided February 3, 2014

        On certification to the Superior Court,
        Appellate Division.

        Daniel J. Pomeroy argued the cause for
        appellant (Pomeroy, Heller & Ley, attorneys;
        Mr. Pomeroy and Karen E. Heller, on the
        briefs).

        Alexander J. Rinaldi argued the cause for
        respondents (Salny Redbord and Rinaldi,
        attorneys).

    JUSTICE LaVECCHIA delivered the opinion of the Court.

    In Pinto v. New Jersey Manufacturers Insurance Co., 183 N.J. 405, 407 (2005), this Court enforced a commercial motor vehicle liability policy's "step-down" provision, which had the effect of capping uninsured or underinsured motorist coverage (UM/UIM coverage) provided through an employer's commercial policy to employees and other qualifying "insureds" at the

limits available to such individuals through their personal automobile insurance coverage. The <u>Pinto</u> holding relied on prior recognition of the legitimacy of such contractual capping provisions, <u>id.</u> at 412 (citing <u>Magnifico v. Rutgers Cas. Ins. Co.</u>, 153 <u>N.J.</u> 406, 418 (1998)), when construing the policy language before the Court.

Two years later, a new statute was enacted that prohibits, in motor vehicle liability policies issued to corporate or business entities, the use of step-down provisions to provide less UM/UIM coverage for employees than that which is provided to the "named insureds" on the policy; and further, if the policy lists only the business entity as the "named insured" then employees are "deemed" eligible for maximum available coverage. <u>L.</u> 2007, <u>c.</u> 163, codified at <u>N.J.S.A.</u> 17:28-1.1(f). The new legislation, which was signed into law on September 10, 2007, specified that it was effective immediately. <u>L.</u> 2007, <u>c.</u> 163, § 2.

This appeal involves the application of the new legislation to a policy that was in effect at the time that the legislation became effective. The policy contained a step-down provision that but for the new legislation would govern the limits of UM/UIM coverage for the injured employee involved in this matter. Specifically, we are called on to address whether the step-down provision is enforceable for a UIM claim by the

2

employee concerning an accident that occurred prior to the adoption of N.J.S.A. 17:28-1.1(f). Thus, we must consider the retroactivity of the statute.

The law favors prospective application of a new statute. To conclude otherwise requires a finding that one of the recognized exceptions to that rule applies. We conclude that there is no evidence that the Legislature explicitly or implicitly directed retroactive application and no other exception pertains here. The legislation, by its very terms, reformed commercial motor vehicle liability policies as of the date it became effective. While that brought about the amendment of existing policies from that date forward for the life of that policy and for any new or renewal policies that were issued subsequent to the new law's effective date, the new law did not retroactively alter otherwise lawful policy terms applicable to claims that arose before the legislation took effect. A UM/UIM claim under an occurrence-based motor vehicle liability policy is governed by the policy terms in effect on the date of the occurrence, here the accident. The timing of the instant accident preceded the effective date when N.J.S.A. 17:28-1.1(f) reformed the employer's motor vehicle liability policy.

Applying established rules of statutory construction and the retroactivity of new legislation, we hold that N.J.S.A.

3

17:28-1.1(f) does not retroactively apply to an accident that preceded the new legislation's effective date.

I.

A.

On July 5, 2007, plaintiff Nowell James was injured in an automobile accident while driving a vehicle owned by his employer, Metric Plumbing and Heating, Inc. (Metric). James's car was struck by another vehicle, operated by Ria T. Demeo and owned by Jon J. Demeo. James suffered serious injuries as a result of the collision. He subsequently settled with the Demeos for $100,000, the policy limit of their insurance. This appeal focuses on his UIM claim under his employer's commercial motor vehicle liability policy.

James was operating a vehicle that Metric insured under a policy issued by New Jersey Manufacturers Insurance Company (Defendant or NJM). The NJM policy was issued on March 18, 2007, and included a $500,000 limit for uninsured/underinsured (UM/UIM) coverage. Because the $100,000 received from the Demeos was insufficient to defray the costs of James's injuries, James sought UIM coverage at the $500,000 limit as an "insured" person under Metric's policy with NJM. However, as was the case in Pinto, the policy issued by NJM contained a step-down provision limiting the recovery of UIM benefits for certain categories of insureds. For individuals who were not "named

4

insureds" on the policy, which James was not, eligibility for UIM benefits was capped at the limit contained in the insured's own personal policy, or a policy by which the insured was covered as a family member.  The specific policy language states as follows:

Limit of Insurance

1. Regardless of the number of covered autos, insureds, premiums paid, claims made or vehicles involved in the accident, the LIMIT OF INSURANCE shown in the Declarations Supplement I for [UM/UIM] Coverage is the most we will pay for all damages resulting from any one accident with an uninsured motor vehicle or an underinsured motor vehicle.

   a. However, subject to our maximum Limit of Insurance for this coverage, if: (1) An insured is not the individual named insured under this policy; (2) That insured is an individual named insured under one or more other policies providing similar coverage; and (3) All such other policies have a limit of insurance for similar coverage which is less than the Limit of Insurance for this coverage; then the most we will pay for all damages resulting from any one accident with [a UM/UIM] motor vehicle shall not exceed the highest applicable limit of insurance under any coverage form or policy providing coverage to that insured as an individual named insured.

   b. However, subject to our maximum Limit of Insurance for this coverage, if: (1) An insured is not the individual named insured under this policy or any other policy;

5

(2) That insured is insured as a family member under one or more other policies providing similar coverage; and
(3) All such other policies have a limit of insurance for similar coverage which is less than the Limit of Insurance for this coverage;
then the most we will pay for all damages resulting from any one accident with [a UM/UIM] motor vehicle shall not exceed the highest applicable limit of insurance under any coverage form or policy providing coverage to that insured as a family member.

James was insured under his wife's personal automobile policy, which had a UIM limit of $50,000. Thus, under Metric's NJM policy, with its applicable step-down provision, James's maximum UIM recovery under the NJM policy was capped at $50,000. Accordingly, NJM denied James's UIM claim because James already had received an amount in excess of $50,000 from his settlement with the Demeos.

B.

On July 9, 2009, James filed this action against NJM seeking UIM benefits under the NJM motor vehicle liability policy issued to his employer to compensate him for injuries sustained in the July 5, 2007, accident. In support of his claim, James primarily relied upon N.J.S.A. 17:28-1.1(f), which provides in pertinent part as follows:

Notwithstanding the provisions of this section or any other law to the contrary, a motor vehicle liability policy or renewal of such policy of insurance, . . . issued in

6

this State to a corporate or business entity . . . , shall not provide less uninsured or underinsured motorist coverage for an individual employed by the corporate or business entity than the coverage provided to the named insured under the policy. A policy that names a corporate or business entity as a named insured shall be deemed to provide the maximum uninsured or underinsured motorist coverage available under the policy to an individual employed by the corporate or business entity, regardless of whether the individual is an additional named insured under that policy or is a named insured or is covered under any other policy providing uninsured or underinsured motorist coverage.

[N.J.S.A. 17:28-1.1(f).]

N.J.S.A. 17:28-1.1(f) was enacted into law, and made immediately effective, on September 10, 2007 -- five months after NJM issued its policy to Metric, and two months after the motor vehicle accident for which James seeks UIM compensation.  Thus, James's claim is premised on the amendment to N.J.S.A. 17:28-1.1 that was adopted during the effective period of NJM's policy with Metric, but after the accident injuring James.

NJM filed a motion for summary judgment arguing that N.J.S.A. 17:28-1.1(f) does not apply retroactively to the facts of James's claim and that the policy's step-down provision was applicable to the claim.  In response, James argued that the Legislature intended to reform all motor vehicle liability policies issued to corporate or business entities that were in existence on September 10, 2007, when N.J.S.A. 17:28-1.1(f)

7

became effective.  Therefore, James maintained that the step-down clause in NJM's policy, issued to Metric and in effect on September 10, 2007, had been abrogated by law on that date and for the entirety of the policy's life.

The trial court determined that the step-down provision included in Metric's policy was implicated on these facts because:  (1) James was covered as an insured under his wife's policy, which contained a UIM coverage limit of $50,000; and (2) James had received in excess of that amount from his settlement with the Demeos.  Accordingly, under the terms of the NJM step-down provision, NJM was required to pay "no more" than the $50,000 coverage limit contained in James's wife's policy.

Rejecting James's claim that N.J.S.A. 17:28-1.1(f) retroactively barred application to employees of step-down provisions in employer motor vehicle liability policies in existence at the time of the law's enactment, the court granted summary judgment to NJM.  The court explained that because the step-down provision was valid at the time the policy was issued by NJM to Metric, it would be unfair to increase NJM's potential liability by retroactively reforming the policy in light of the subsequent passage of N.J.S.A. 17:28-1.1(f).  The court explained that NJM permissibly "relied on the law which permitted step down provisions" when negotiating its motor vehicle liability policy with Metric and that James "d[id] not

8

have the same reasonable expectations" because N.J.S.A. 17:28-1.1(f) was not adopted until after Metric had already entered into its insurance contract with NJM.

James appealed and the Appellate Division reversed in an unpublished opinion. The panel reviewed two prior Appellate Division decisions that had considered the retroactive effect to be given to N.J.S.A. 17:28-1.1(f): Olkusz v. Brown, 401 N.J. Super. 496 (App. Div. 2008) (finding no legislative intent for retroactive application of new law), and Hand v. Philadelphia Insurance Co., 408 N.J. Super. 124 (App. Div.) (finding implicit support for retroactivity but finding manifest injustice in retroactive application under facts presented), certif. denied, 200 N.J. 506 (2009). The panel noted that although those decisions had reached differing conclusions as to the Legislature's intent concerning the retroactive implementation of the statute, neither had provided relief from an otherwise valid step-down provision for accidents that had long preceded the new law's effective date of September 10, 2007. The panel in the instant matter, confronting an accident that had occurred during the life of a policy in effect at the time that N.J.S.A. 17:28-1.1(f) became law, but before the statute's September 10, 2007, effective date, concluded that the amendatory provision reformed the NJM policy that was in existence when the amendment took effect. The panel reasoned that the step-down provision in

9

NJM's policy with Metric "was eliminated" and, further, that NJM's step-down provision was unenforceable irrespective of when during the life of that policy an accident involving an employee of Metric actually occurred. The panel also rejected the argument that its application of the amendatory legislation was "manifestly unjust or otherwise impair[ed] defendant's contractual rights."

We granted NJM's petition for certification to consider whether the amendatory legislation applies retroactively to an accident that preceded the effective date of the legislation and, if so, whether reforming a motor vehicle liability policy in such a setting would be manifestly unjust. James v. N.J. Mfrs. Ins. Co., 212 N.J. 460 (2012).

## II.

### A.

As previously stated, this Court's decision in Pinto, supra, issued on June 6, 2005, upheld the validity of and enforced a step-down provision in respect of UM/UIM benefits provided to an employee of a corporate entity through the employer's motor vehicle liability policy. 183 N.J. at 407-10. The Pinto holding was premised on this Court's prior recognition of the legitimacy of such contractual capping provisions. Id. at 412 (citing Magnifico v. Rutgers Cas. Ins. Co., 153 N.J. 406, 418 (1998)). And, in its construction of the language of the

10

insurance policy involved, the decision rested on common law principles of contract interpretation. Id. at 412-13.

A little more than two years after Pinto was decided, the Legislature passed Senate Bill No. 1666, which the Governor signed into law on September 10, 2007, as chapter 163 of the Laws of 2007. The new legislation amended N.J.S.A. 17:28-1.1 to include the following additional subsection:

> f. Notwithstanding the provisions of this section or any other law to the contrary, a motor vehicle liability policy or renewal of such policy of insurance, insuring against loss resulting from liability imposed by law for bodily injury or death, sustained by any person arising out of the ownership, maintenance or use of a motor vehicle, issued in this State to a corporate or business entity with respect to any motor vehicle registered or principally garaged in this State, shall not provide less uninsured or underinsured motorist coverage for an individual employed by the corporate or business entity than the coverage provided to the named insured under the policy. A policy that names a corporate or business entity as a named insured shall be deemed to provide the maximum uninsured or underinsured motorist coverage available under the policy to an individual employed by the corporate or business entity, regardless of whether the individual is an additional named insured under that policy or is a named insured or is covered under any other policy providing uninsured or underinsured motorist coverage.

The Statement accompanying S-1666 described the purpose of the legislation.

11

This bill prohibits the use of step-down provisions in motor vehicle liability policies issued to corporate or business entities to lower uninsured or underinsured motorist coverage for employees to the limits of coverage available to the employees under their personal policies.

This bill is in response to the New Jersey Supreme Court's decision in [Pinto]. In Pinto, the court held that as to a motor vehicle liability policy that names a corporate or business entity as a named insured, step-down provisions which limit uninsured or underinsured motorist coverage for employees of that entity that are not individuals named on the policy are valid and enforceable. Thus, the court's ruling, which upholds earlier case law on the subject, allows an employee's coverage under an employer's business motor vehicle insurance policy to be limited to the lower limits of uninsured or under insured motorist coverage contained in the employee's individual motor vehicle liability policy, even in situations in which the employee is injured in a covered vehicle in a work-related accident, if the employer's policy so provides.

This bill reverses the effect of the Pinto decision by prohibiting step-down provisions in these policies. Further, the bill expressly provides that a policy that names a corporate or business entity as a named insured shall be deemed to provide the maximum uninsured or underinsured motorist coverage available under the policy to any individual employed by the corporate or business entity, regardless of whether the individual is an additional named insured under that policy, or is a named insured or is covered under any other policy providing uninsured or underinsured motorist coverage.

In respect of the new law's effective date, S-1666 provided that "[t]his act shall take effect immediately."  See L. 2007, c. 163, § 2.

The question presented here is whether the amendment to N.J.S.A. 17:28-1.1 was intended to apply to an accident that preceded its effective date, but which occurred during the life of a policy that was in force at the time of the statute's enactment.  Our analysis is informed by rules of statutory construction that govern the retroactive application of legislation.

B.

It is well established that "statutes generally should be given prospective application."  In re D.C., 146 N.J. 31, 50 (1996).  Settled rules of statutory construction favor prospective rather than retroactive application of new legislation.  See Cruz v. Cent. Jersey Landscaping, Inc., 195 N.J. 33, 45 (2008); Nobrega v. Edison Glen Assocs., 167 N.J. 520, 536 (2001); see also Gibbons v. Gibbons, 86 N.J. 515, 522 (1981) ("It is a fundamental principle of jurisprudence that retroactive application of new laws involves a high risk of being unfair." (quoting 2 Sutherland, Statutory Construction, § 41.02 at 247 (4th ed. 1973))).  The preference for prospective application of new legislation "is based on our long-held notions of fairness and due process."  Cruz, supra, 195 N.J. at

13

45; accord Landgraf v. USI Film Prods., 511 U.S. 244, 266, 114 S. Ct. 1483, 1497, 128 L. Ed. 2d 229, 253 (1994) (stating that "[t]he Due Process Clause . . . protects the interests in fair notice and repose that may be compromised by retroactive legislation").

There is a two-part test for determining "'whether a statute could be applied retroactively.'" D.C., supra, 146 N.J. at 50 (quoting Phillips v. Curiale, 128 N.J. 608, 617 (1992)).

> The first part questions whether the Legislature intended to give the statute retroactive application. The second part involves whether retroactive application of that statute will result in either an unconstitutional interference with vested rights or a manifest injustice.
>
> [Ibid. (internal citations and quotation marks omitted).]

Consistent application of that test results in three circumstances that will justify giving a statute retroactive effect: (1) when the Legislature expresses its intent that the law apply retroactively, either expressly or implicitly; (2) when an amendment is curative; or (3) when the expectations of the parties so warrant. See Cruz, supra, 195 N.J. at 46; D.C., supra, 146 N.J. at 50; Twiss v. State, 124 N.J. 461, 467 (1991); Gibbons, supra, 86 N.J. at 522-23.

The Legislature may demonstrate its intent to apply a statute retroactively either by stating so "in the language of

14

the statute or in the pertinent legislative history . . . or [such intent may be] implied." Gibbons, supra, 86 N.J. at 522 (citation omitted); see also Oberhand v. Dir., Div. of Taxation, 193 N.J. 558, 571 (2008) (noting legislative intent that statute be given retroactive application may be express or implied). Implied retroactivity may be found from the statute's operation when retroactive application is necessary to fulfill legislative intent. See Gibbons, supra, 86 N.J. at 522 (noting that implied retroactivity may be found where "necessary to make the statute workable or to give it the most sensible interpretation"); Twiss, supra, 124 N.J. at 467 (same). When the Legislature addresses whether a statute should apply retroactively to the law's enactment, that expression of legislative intent should be given effect absent a compelling reason not to do so. See Nobrega, supra, 167 N.J. at 537.

A statutory provision also may be afforded retroactive application if it is "curative," that is, designed to "remedy a perceived imperfection in or misapplication of a statute." Schiavo v. John F. Kennedy Hosp., 258 N.J. Super. 380, 386 (App. Div. 1992), aff'd, 131 N.J. 400 (1993); see Cruz, supra, 195 N.J. at 46. "Generally, curative acts are made necessary by inadvertence or error in the original enactment of a statute or in its administration." 2 Sutherland, Statutory Construction, § 41.11 at 417 (5th ed. 1991). We have explained that an

15

amendment is curative if it does "not alter the act in any substantial way, but merely clarifie[s] the legislative intent behind the [previous] act." 2nd Roc-Jersey Assocs. v. Town of Morristown, 158 N.J. 581, 605 (1999); accord Schiavo, supra, 258 N.J. Super. at 386 (stating similarly that "the new statute [must be] intended simply to explain and to clarify the existing law rather than to change the meaning of the original law" (internal citations and quotation marks omitted)).

Finally, we have acknowledged that, absent a clearly expressed intent by the Legislature to have a statute apply only prospectively, "such considerations as the expectations of the parties may warrant retroactive application of a statute." Gibbons, supra, 86 N.J. at 523.

Once it has been determined that a statute is subject to retroactive application, a separate inquiry requires examination for manifest injustice to the party adversely affected by retroactive application of the changed law. See ibid. Thus, notwithstanding a readily gleaned legislative intent to retroactively apply new legislation, or the determination that a statute is clearly curative, the impact on the affected party must be considered. See D.C., supra, 146 N.J. at 58 (stating that affected party's reliance on prior law and "the unfairness of changing that law" are important factors in retroactivity analysis); Innes v. Innes, 117 N.J. 496, 511 (1990) (stating

16

that manifest injustice inquiry focuses on "whether the parties relied on prior law to their detriment, such that retroactive application would cause a 'deleterious and irrevocable' result" (quoting Gibbons, supra, 86 N.J. at 523-24)).

III.

In analyzing the retroactivity question before us, we first must examine the change in law that the new statute directs. The plain language of N.J.S.A. 17:28-1.1(f), enacted in response to the Pinto holding, is our starting point in discerning and implementing the legislative intent underlying this new statute, including the issue of retroactive effect. See Norfolk S. Ry. Co. v. Intermodal Props., LLC, 215 N.J. 142, 166 (2013).

The opening operative language of the legislation is detailed and precise in directing the effect that the new legislation is to have:

> Notwithstanding the provisions of this section or any other law to the contrary, a motor vehicle liability policy or renewal of such policy of insurance, insuring against loss resulting from liability imposed by law for bodily injury or death, sustained by any person arising out of the ownership, maintenance or use of a motor vehicle, issued in this State to a corporate or business entity with respect to any motor vehicle registered or principally garaged in this State, shall not provide less uninsured or underinsured motorist coverage for an individual employed by the corporate or business entity than the coverage provided to the named insured under the policy.

17

[N.J.S.A. 17:28-1.1(f) (emphasis added).]

That straightforward language prohibits providing an employee with less coverage than the named insured on a corporate or business entity's commercial automobile liability policy. The plain language of the second sentence of the amendment further directs what should happen if the corporate or business entity's commercial automobile liability policy has not identified any named insured -- other than the business entity itself -- which was the same situation as existed in Pinto. That second sentence of N.J.S.A. 17:28-1.1(f) states as follows:

> A policy that names a corporate or business entity as a named insured shall be deemed to provide the maximum uninsured or under insured motorist coverage available under the policy to an individual employed by the corporate or business entity, regardless of whether the individual is an additional named insured under that policy or is a named insured or is covered under any other policy providing uninsured or under insured motorist coverage.

Giving that plain and direct language its normal meaning, it is apparent that neither of the two operative sentences comprising this legislative provision prohibits step-down provisions in commercial motor vehicle liability policies for uninsured or underinsured motorist coverage.

Stated simply, step-down provisions are not ultra vires as a result of the statute's plain language. The Court's role in undertaking statutory interpretation is to give "words their

18

ordinary meaning and significance." Perez v. Professionally Green, LLC, 215 N.J. 388, 399 (2013) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)). A court may not "rewrite a plainly-written enactment of the Legislature []or presume that the Legislature intended something other than that expressed by way of the plain language" of the statute. Ibid. (alteration in original) (internal citation and quotation marks omitted). The text of the instant statute does not "prohibit" use of step-down provisions, notwithstanding that generalized description in the sponsor's statement. Rather, the two operative sentences of the new law direct how employees must be treated in the presence of such provisions. If the words are clear and unambiguous, extrinsic aids may not be used to create ambiguity. See State v. Shelley, 205 N.J. 320, 323 (2011). It is the text of the statute that controls. Ibid.

The precise way in which the operative language of N.J.S.A. 17:28-1.1(f) is worded demonstrates that the amendment does not render step-down provisions ultra vires in other settings in which an "insured" under a motor vehicle liability policy issued to a corporate or business entity might remain subject to a step-down limit on coverage under a commercial policy. Examples of such other settings in which a step-down would operate permissibly include a family member of an employee riding in a corporately registered car, or a non-employee permissive user of

19

the vehicle, who was injured by an uninsured or underinsured motorist. As was pointed out correctly in argument by NJM before this Court, such examples would meet the criteria of an innocent "insured" eligible for coverage under a typical liability policy of automobile insurance and, specific to the case at hand, under the policy in issue in this matter. NJM persuasively argues that one would expect that the Legislature was aware that an "insured" subject to a commercial policy's step-down provision for UM/UIM applies more broadly than simply to the employees of the business entity and, further, that the Legislature, by not outright prohibiting all use of step-down provisions in commercial motor vehicle liability policies, recognized sound policy reasons for permitting such contractually limiting provisions to be negotiated in the setting of commercial liability insurance.

That said, although the Legislature did not proscribe the use of step-down provisions in corporate or business motor vehicle liability policies, the language of the two operative sentences clearly altered how policies containing such provisions would be permitted to operate in respect of employees. Again, we follow the well-recognized principle that a statute's language must be given its ordinary meaning. N.E.R.I. Corp. v. N.J. Highway Auth., 147 N.J. 223, 236 (1996). The straightforward text of N.J.S.A. 17:28-1.1(f) is not

ambiguous as to how it alters commercial policies of automobile insurance. We thus give those words their normally ascribed meaning: The level of UM/UIM coverage for a "named insured" in a policy shall be the same level that is provided to employees of the corporation or business entity by operation of law, as directed through the first sentence of the new legislation. If the corporation or the business entity is the only named insured, then employees of that entity must receive under the commercial policy the maximum available amount of UM/UIM coverage by operation of law, as directed through the second sentence of the new legislation.

The language of the statute is also explicit in identifying the effective date of the amendment. Pursuant to section 2 of the bill that, when enacted, became N.J.S.A. 17:28-1.1(f), the amendment was to take effect immediately. See L. 2007, c. 163, § 2. Because the bill was signed into law on September 10, 2007, the new law took effect immediately on September 10, 2007. As the Olkusz panel aptly noted, had the Legislature intended an earlier date for the law to take effect, that intention could have been made plain in the very section directing when the law would become effective. Olkusz, supra, 401 N.J. Super. at 502. However, the Legislature did not do so. Neither the law nor the bill sponsor's statement expresses that the law was to have operative effect before its stated effective date. Id. at 503.

21

In short, the plain language of the statute simply does not specify an intended retroactive effect of the statute on commercial motor vehicle liability policies prior to the law's effective date. Ibid. We are therefore in accord with the view generally accepted in the Appellate Division that the Legislature provided no express direction that the new legislation be given a retroactive application. See ibid.; Hand, supra, 408 N.J. Super. at 138.

That does not mean that the Legislature did not explicitly intend for N.J.S.A. 17:28-1.1(f) to impact policies in existence on the amendment's effective date. To the contrary, we have no doubt from the language of the new law that the Legislature intended immediately to affect motor vehicle liability policies of corporations or business entities in force as of the date that the new law took effect. The natural and most straightforward application of the immediate effective date in tandem with the directory nature of the operative sentences of the legislation leads us to conclude that the new legislation reformed policies as of the law's effective date by stating what level of UM/UIM coverage must be provided to employees through the commercial automobile policy held by their corporate or business employer. Indeed, the "shall be deemed" language of the second sentence pointedly specified that employees would receive the maximum available level of UM/UIM coverage when only

22

the business was identified as the "named insured" under the policy, plainly evidencing the Legislature's intent to immediately alter a policy in existence when the statute took effect. In combination, we conclude that those explicit and detailed statutory terms clearly demonstrate that employees seeking coverage for accidents occurring after the legislation took effect would be covered under reformed policies, as directed by law pursuant to the legislation.

To the extent that such an interpretation interferes with policies negotiated before the amendment's passage but in existence on September 10, 2007, we find explicit legislative intent that the legislation should have that impact. Insurers cannot cry foul for the legislative determination to implement a mid-policy alteration for accidents occurring after the effective date for, as we recently stated, "[i]n a highly regulated industry, such as insurance, businesses have no 'contractual expectation' that a naturally fluid regulatory scheme, 'subject to change at any time,' will remain in an unalterably fixed state." Farmers Mut. Fire Ins. Co. v. N.J. Prop. Liab. Ins. Guar. Ass'n, 215 N.J. 522, 547 (2013) (citation omitted).

IV.

In the facts of this appeal, we are asked whether Metric's policy with NJM, in existence when the new law came into effect,

23

should be regarded as changed prior to the date of the amendment's enactment so as to include the date on which James's accident occurred. To reach such a conclusion, there must be an implicit intent by the Legislature for such retroactive application of the new law's textual directives or some other exception to the rule of prospective application of a new law because no explicit direction for retroactive application was forthcoming from the legislation or its history. We turn first to an examination for any implicit intent to have the law applied as James argues.

A.

James and the panel below relied for support on the analysis in Hand, supra, in which the Appellate Division concluded that the language of N.J.S.A. 17:28-1.1(f) evinced an implicit legislative intent to retroactively reform all commercial liability policies containing a step-down provision in existence on the effective date of the new legislation and to provide an immediate remedy for all who had a claim pending as of that date. 408 N.J. Super. at 141. The Hand panel reasoned that a solely prospective application to policies issued after the date of the law's enactment would render much of N.J.S.A. 17:28-1.1(f) superfluous. Id. at 139-41. Thus, the panel continued, the Legislature must have intended for N.J.S.A. 17:28-1.1(f) to eliminate step-down provisions and to bar their

24

enforcement in all policies for claims pending as of the effective date of the legislation. Id. at 141 (concluding that Legislature intended to provide remedy to plaintiff notwithstanding that accident occurred two years prior to amendment's enactment, and claim was filed prior to amendment on policy whose term apparently had expired before legislation took effect). While it is correct that a retroactive intent may be implied from a statute's operation, we glean no such implicit intent in this amendatory legislation.

First, as noted, a plain language construction of the operative terms of the new legislation reveals that it does not proscribe step-down provisions. It simply thwarts implementation of such provisions for a certain class of insureds who otherwise might be subject to them, namely employees of a corporate or business entity whose policy contains such a provision. The legislation does not prevent a step-down provision from operating for other persons subject to its terms. Thus, when the amendment became effective it immediately began blocking the provision's application to employees and altered or filled in contract terms to provide a remedy. In other words, on its effective date N.J.S.A. 17:28-1.1(f) reformed the contract by operation of law. The timing of the reformation of the contract is critical.

Like many motor vehicle insurance policies, the policy in this case was an "occurrence policy," whose benefits are triggered on the date of the occurrence, generally the accident. See Zuckerman v. Nat'l Union Fire Ins. Co., 100 N.J. 304, 312 (1985) (discussing "occurrence" policies in context of automobile insurance). We previously have held that UM/UIM claims specifically "arise at the time of the accident." Green v. Selective Ins. Co. of Am., 144 N.J. 344, 353 (1996). Under this system, an insured's right to UM/UIM coverage and the benefits to be accorded arises at the time of the occurrence. Thus, for accidents like the one that unfortunately occurred in James's case, the date of the accident controls the occurrence date and the legal obligations under the contract. At the time of James's accident, the contract had not yet been affected by the amendatory provision, even though that corporate entity's commercial motor vehicle liability policy was affected by the legislative amendment later during the contract's policy period.

As stated previously, N.J.S.A. 17:28-1.1(f) amended policies when the law took effect, immediately reforming existing policies of insurance prospectively from that date in accordance with its precise and direct terms as to how commercial motor vehicle liability policies must treat employees under any step-down provision impacting UM/UIM coverage. Thus, an accident to an employee occurring after the effective date of

26

the amendment but before the expiration of the policy period would be treated differently by operation of law than would be an accident that preceded that law's effective date.

Our construction gives plain and direct meaning to the straightforward language of the new law. See DiProspero, supra, 183 N.J. at 492. It gives immediate effect to the law's reference to policies, which we understand the Legislature to have meant existing policies as of the time of the law's immediate implementation. Further, our interpretation of the plain meaning of the law's effective date provision and how that applies to the operative provisions of the legislation does not render superfluous any of the law's references to the "renewal" of policies. See McCann v. Clerk of Jersey City, 167 N.J. 311, 321 (2001) ("It is a cardinal rule of statutory construction that full effect should be given, if possible, to every word of a statute." (internal quotation marks omitted)). The amendatory legislation has continuing effect on any renewal policy for existing customers, as well as for any subsequently issued policy of insurance to a new commercial insured, that contains a step-down provision governing UM/UIM benefits that must be applied in accordance with the public policy that the Legislature has decreed for business entities insuring corporate vehicles registered or garaged in New Jersey.

27

In sum, we see no explicit or implicit legislative intent to apply the law in the "retroactive" way in which James seeks. While the amendment applies to the corporate policy issued by NJM to Metric, it amends the policy as of the date the amendment took effect, September 10, 2007, and not before.

B.

We perceive no other basis of support for the retroactive application sought by James.

The curative exception to the general rule favoring the prospective application of statutes is not applicable here. N.J.S.A. 17:28-1.1(f) did not cure a judicial misinterpretation of the law. See 2nd Roc-Jersey Assocs., supra, 158 N.J. at 605. Prior case law had recognized the use of step-down provisions, see, e.g., Magnifico v. Rutgers Cas. Ins. Co., 153 N.J. 406, 418 (1998), and Pinto merely interpreted and enforced contractual language consistent with that common law. Pinto, supra, 183 N.J. at 407. The new law disallows the "enforceability of a contractual clause, which [this Court] in Pinto . . . found to be an issue of 'insurance contract interpretation.'" Olkusz, supra, 401 N.J. Super. at 503. Based on public policy considerations, the amendment now prohibits the application of step-down provisions in business entities' motor vehicle insurance policies to limit the recovery of UM/UIM benefits by employees. It does not "clarify or expand upon a preexisting

28

statutory provision." Ibid. It is not curative under any definition of the term. See 2nd Roc-Jersey Assocs., supra, 158 N.J. at 605.

There also is no basis for concluding that the expectations of the parties justify retroactive application of N.J.S.A. 17:28-1.1(f). The insurance policy was issued on March 18, 2007, and the accident occurred on July 5, 2007. At neither point was N.J.S.A. 17:28-1.1(f) adopted or effective. The controlling law held that this type of step-down clause was enforceable. See Pinto, supra, 183 N.J. at 412. Accordingly, at the time of the issuance of the contract and of the accident, NJM had a reasonable basis to believe that the provision was enforceable.

The expectation of retroactive application should be strongly apparent to the parties in order to override the lack of any explicit or implicit expression of intent for retroactive application. No case for such expectation has been made out here. To the extent that James points to the existence of a pending bill in the Legislature at the time of his accident, the argument fails to establish an expectation that is recognizable as requiring a retroactive application of the new law to his case. The possibility that a bill might become law is an expectation built on uncertainty until it happens. Moreover, the bill that James points to never indicated in its language or

its accompanying statements that it would provide retroactive relief. Therefore, we do not find that the "expectations of the parties" exception to the general rule favoring the prospective application of new legislation is present here.

We thus conclude that the amendment is not curative and that the expectations of the parties do not warrant the retroactive application of N.J.S.A. 17:28-1.1(f) to UM/UIM claims arising from accidents that occurred before its effective date, September 10, 2007.

C.

To summarize, with respect to the question of retroactivity of new legislation that is before us, N.J.S.A. 17:28-1.1(f) by its very language had an immediately reformative effect on commercial motor vehicle liability policies in existence on the date of its enactment, like the one whose policy life included the date of James's accident. The new law reformed policies when it became effective; however, an employee's claim made on a motor vehicle liability policy must be judged based on the law governing the policy at the time of the occurrence: the accident. Thus, employee UM/UIM claims involving accidents that occurred on or after the effective date of N.J.S.A. 17:28-1.1(f) are governed by that new law. Cf. Sexton v. Boyz Farms, Inc., 780 F. Supp. 2d 361, 366 (D.N.J. 2011) (concluding that N.J.S.A. 17:28-1.1(f) reformed policies extant on September 10, 2007,

30

such that claims arising after September 10, 2007, would no longer be subject to step-down provisions).

We hold that, when it became effective, the new law applied to and prospectively reformed, for employees, a corporation's or business entity's motor vehicle liability policy containing UM/UIM step-down provisions, including policies that were in force as of the law's effective date, September 10, 2007. Our holding enforces the effective date plainly directed by the Legislature and all operative language of the new provision. The holding also incorporates our conclusion that none of the exceptions to the general rule favoring prospective application of new legislation pertain to N.J.S.A. 17:28-1.1(f).

James's UM/UIM claim is governed by the provisions of the NJM policy that were lawfully in existence as of the date of his accident, which preceded the effective date of the new law. We therefore conclude that the Appellate Division erred in retroactively applying N.J.S.A. 17:28-1.1(f) to James's claim and reversing the trial court's award of summary judgment to NJM on that basis.[1]

---

[1] This matter is before the Court on NJM's petition for certification. We therefore reject James's contention before this Court that, despite the non-applicability of N.J.S.A. 17:28-1.1(f), summary judgment was not appropriate because, he claims, there was an issue of material fact as to whether James was a "named insured" under Metric's policy. We note that it was undisputed that the only "named insured" in the policy was Metric and that James was an "insured" under the policy.

31

V.

The judgment of the Appellate Division is reversed.

CHIEF JUSTICE RABNER, JUSTICES ALBIN and PATTERSON, and JUDGE CUFF (temporarily assigned) join in JUSTICE LaVECCHIA's opinion.  JUDGE RODRÍGUEZ (temporarily assigned) did not participate.

---

Although James argues that there is a genuine dispute over whether he should be regarded as the equivalent of a named insured, that argument was rejected in Pinto, supra, which addressed essentially identical policy language and concluded that a policy is unambiguous where it names the corporate entity as the only "named insured" and includes employees as "insureds."  183 N.J. at 417.

SUPREME COURT OF NEW JERSEY

NO.   A-26                          SEPTEMBER TERM 2012


ON CERTIFICATION TO        Appellate Division, Superior Court



NOWELL JAMES and MARYANN
JAMES, his wife,

        Plaintiffs-Respondents,

                v.

NEW JERSEY MANUFACTURERS
INSURANCE COMPANY,

        Defendant-Appellant.


DECIDED            February 3, 2014
                Chief Justice Rabner          PRESIDING
OPINION BY      Justice LaVecchia
CONCURRING/DISSENTING OPINIONS BY
DISSENTING OPINION BY


| CHECKLIST | REVERSE | |
| --- | --- | --- |
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUDGE RODRÍGUEZ (t/a) | ---------------------- | --------------------- |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 5 | |


1