**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0270-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DORIAN J. ROBERTS,
a/k/a DORIAN ROBERTS,

    Defendant-Appellant.

_____

Submitted February 7, 2022 – Decided March 1, 2022

Before Judges Rose and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 02-12-4070.

Joseph E. Krakora, Public Defender, attorney for appellant (Candace Caruthers, Assistant Deputy Public Defender, of counsel and on the brief).

Grace C. MacAulay, Acting Camden County Prosecutor, attorney for respondent (Jason Magid, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Dorian J. Roberts appeals from a May 31, 2019 denial of his motion to correct an illegal sentence. He also urges us to remand this matter for resentencing due to the Legislature's amendment of N.J.S.A. 2C:44-1(b) to include youth as a mitigating factor. We affirm.

I.

We glean the following facts from defendant's 2003 sentencing. On January 19, 2002, defendant, then nineteen years old, went to the home of Beverly Harper to collect ten dollars from her boyfriend, Stephen Holland. Holland purportedly owed defendant this sum for a bag of crack cocaine. After Holland informed defendant he "only had five dollars," the two men stepped away from the home. Holland quickly returned and told Harper to call the police, explaining defendant had taken Holland's five dollars at gunpoint. Defendant immediately followed Holland back into the home and shot him twice, killing him.

Harper was hiding under her kitchen table when the shots were fired. Defendant found her, and as she tried to flee, he fired the gun at her head, grazing her before she lost consciousness. When she regained consciousness, she thought defendant had left her home, so she made her way to the bedroom. Defendant was still in the house and proceeded to stab her multiple times with

A-0270-19

a screwdriver, warning he would "finish her off" if she tried to leave or told anyone what she saw. As he left Harper's home, defendant blocked her bedroom door with a sofa. She stayed in her home for two days before she managed to leave and seek help. She was unable to use her phone because the line had been cut.

In September 2003, defendant pled guilty to first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1) and second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1). He was sentenced to a twenty-five-year prison term for the manslaughter offense, and a ten-year prison term for the assault charge, with the sentences running consecutive to each other and subject to the No Early Release Act, N.J.S.A. 2C:43-7.2. At sentencing, the judge found aggravating factors one (the nature and circumstances of the offense), two (the gravity and seriousness of harm inflicted on the victim), three (risk of re-offense), and nine (need to deter), N.J.S.A. 2C:44-1(a)(1), (2), (3), and (9), but no mitigating factors. The judgment of conviction was entered in November 2003. Defendant filed a direct appeal of his aggregate thirty-five-year sentence, which this court heard on an excessive sentencing calendar pursuant to Rule 2:9-11, and affirmed. State v. Roberts, No. A-3920-03 (App. Div. Sept. 23, 2004).

A-0270-19

In April 2018, defendant filed a motion to correct an illegal sentence, pursuant to Rule 3:21-10(b)(5). During argument on the motion, defendant's counsel acknowledged he moved under Rule 3:21-10(b)(5) to avoid the time bar under Rule 3:21-10(a),[1] stating "[t]he only way I could get this before [the court] was to make an argument that this was an illegal sentence, and so we made that . . . argument." Defense counsel urged the judge to reconsider defendant's sentences, noting they were "at the top of the . . . range" and should be reexamined because when defendant was sentenced in 2003, the judge relied on a paradigm rooted in presumptive prison terms, a practice that was eliminated under State v. Natale, 184 N.J. 458, 487 (2005). Defense counsel stated that based on the Court's holding in Natale, defendant's sentences were "per se, illegal."

On May 31, 2019, the motion judge issued an oral decision, denying defendant's application. The judge explained that when the Natale Court prospectively eliminated presumptive sentences, it also allowed for its holding to be "given pipeline retroactivity, which this [c]ourt defines as cases that were still on direct appeal as of the date of the Natale decision, . . . on August 2nd of

---

[1] Rule 3:21-10(a) provides that "a motion to reduce or change a sentence shall be filed not later than [sixty] days after the date of the judgment of conviction."

2005." The judge found defendant's appeal was "not in the pipeline" when Natale was decided, noting we affirmed his sentences in September 2004. Moreover, the judge concluded defendant's sentences were within the proper statutory range at the time of sentencing in 2003, so there was no basis for the court to find his sentences were illegal.

## II.

On appeal, defendant raises the following novel contention:

POINT I

THIS COURT SHOULD REMAND FOR RESENTENCING FOR RETROACTIVE APPLICATION OF THE NEW YOUTH MITIGATING FACTOR BECAUSE DEFENDANT WAS ONLY [NINETEEN]-YEARS-OLD AT THE TIME OF THIS OFFENSE. [(NOT RAISED BELOW).]

This argument is unavailing.

As a threshold matter, we note defendant no longer challenges the legality of his sentence. Because the argument he now advances was not raised before the motion judge, we need not consider it on appeal. Selective Ins. Co. of Am. v. Rothman, 208 N.J. 580, 586 (2012); Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). Appellate review is not limitless. "The jurisdiction of appellate courts rightly is bounded by the proofs and objections critically

5

explored on the record before the trial court by the parties themselves." State v. Robinson, 200 N.J. 1, 19 (2009); see also Zaman v. Felton, 219 N.J. 199, 226-27 (2014). Nevertheless, for the sake of completeness, we briefly address defendant's contention.

On October 19, 2020, the Legislature passed, and the Governor signed into law, several recommendations of the Criminal Sentencing and Disposition Commission. See L. 2020, c. 106; L. 2020, c. 109; L. 2020, c. 110. One of the new laws added a new mitigating factor for a court to consider in imposing a criminal sentence. L. 2020, c. 110. Specifically, mitigating factor fourteen was added so a court "may properly consider" the mitigating circumstance that "defendant was under [twenty-six] years of age at the time of the commission of the offense." N.J.S.A. 2C:44-1(b)(14).

The question of whether a newly enacted law applies retroactively "is a purely legal question of statutory interpretation" based on legislative intent. State v. J.V., 242 N.J. 432, 442 (2020), as rev. (June 12, 2020) (quoting Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 386 (2016)). "To determine the Legislature's intent, we look to the statute's language and give those terms their plain and ordinary meaning . . . ." Ibid. (citing DiProspero v. Penn, 183 N.J. 477, 492 (2005)). If the language of the statute clearly reflects

6

the Legislature's intent, then courts apply the law as written, affording the terms their plain meaning. Id. at 443. If the language is ambiguous, "we may resort to 'extrinsic interpretative aids, including legislative history,' to determine the statute's meaning." Ibid. (quoting State v. S.B., 230 N.J. 62, 68 (2017)).

"When the Legislature does not clearly express its intent to give a statute prospective application, a court must determine whether to apply the statute retroactively." Ibid. (quoting Twiss v. Dep't of Treasury, 124 N.J. 461, 467 (1991)). But courts also presume when considering criminal laws that the Legislature intended them to have prospective application only. Ibid. Consistent with the presumption in favor of prospective application, the savings statute also "establishes a general prohibition against retroactive application of penal laws[.]" State v. Chambers, 377 N.J. Super. 365, 367 (App. Div. 2005); see also N.J.S.A. 1:1-15.

Our Supreme Court has recognized three exceptions to the presumption of prospective application of statutes. J.V., 242 N.J. at 444. Those exceptions apply when:

> (1) the Legislature provided for retroactivity expressly, either in the language of the statute itself or its legislative history, or implicitly, by requiring retroactive effect to "make the statute workable or to give it the most sensible interpretation"; (2) "the statute

A-0270-19

is ameliorative or curative"; or (3) the parties' expectations warrant retroactive application.

[Ibid. (quoting Gibbons v. Gibbons, 86 N.J. 515, 522-23 (1981)).]

An ameliorative statute "refers only to criminal laws that effect a reduction in a criminal penalty." Perry v. N.J. State Parole Bd., 459 N.J. Super. 186, 196 (App. Div. 2019) (quoting Street v. Universal Mar., 300 N.J. Super. 578, 582 (App. Div. 1997)). To be afforded retroactive application, an ameliorative statute "must be aimed at mitigating a legislatively perceived undue severity in the existing criminal law." State in Interest of J.F., 446 N.J. Super. 39, 55 (App. Div. 2016) (quoting Kendall v. Snedeker, 219 N.J. Super. 283, 286 n.1 (App. Div. 1987)).

A curative change to a statute is limited to actions that "remedy a perceived imperfection in or misapplication of a statute." Pisack v. B & C Towing, Inc., 240 N.J. 360, 371 (2020) (quoting James v. N.J. Mfrs. Ins. Co., 216 N.J. 552, 564 (2014)). A curative change does not "alter the act in any substantial way, but merely clarifie[s] the legislative intent behind the [previous] act." Ibid. (alterations in original) (quoting James, 216 N.J. at 564).

N.J.S.A. 2C:44-1(b)(14) is not curative because it did not remedy an imperfection; rather, it added a new mitigating factor based on new concerns

8

regarding youthful offenders.  See L. 2020, c. 110.  Moreover, while the new mitigating factor is ameliorative, the Legislature stated that the statute was to "take effect immediately," L. 2020, c. 110, thereby signaling that it was not to be given retroactive effect.

In two recent decisions, our Supreme Court held that statutes that have an immediate or future effective date evidence the Legislature's intent to afford prospective application only.  See Pisack, 240 N.J. at 370 (statute "take[s] effect immediately" on the day it is signed into law); J.V., 242 N.J. at 435 (statute applies in the future when effective date is after date of statute's enactment).  In J.V., the Court explained that "[h]ad the Legislature intended an earlier date for the law to take effect, that intention could have been made plain in the very section directing when the law would become effective."  242 N.J. at 445 (quoting James, 216 N.J. at 568).  Because we presume the Legislature was aware of the judicial construction of its statutes, N.J. Democratic Party, Inc. v. Samson, 175 N.J. 178, 195 n.6 (2002), we assume the Legislature was aware of Pisack (issued on Jan. 16, 2020) and J.V. (issued on June 12, 2020), before it enacted N.J.S.A 2C:44-1(b)(14) on October 19, 2020.

Moreover, the Legislature did not express any intent for the statute to be applied retroactively.  Silence on the question of retroactivity may be "akin to a

legislative flare, signaling to the judiciary that prospective application is intended." Olkusz v. Brown, 401 N.J. Super. 496, 502 (App. Div. 2008). Accordingly, because defendant was sentenced in 2003, well before mitigating factor fourteen was added, he is not entitled to a resentencing based purely on that mitigating factor. Our holding in this regard is consistent with published cases that have addressed whether mitigating factor fourteen should be applied retroactively. See e.g., State v. Bellamy, 468 N.J. Super. 29 (App. Div. 2021); State v. Tormasi, 466 N.J. Super. 51 (App. Div. 2021).[2]

In Bellamy, we held that when there is an independent basis to order a new sentencing hearing, mitigating factor fourteen should be applied in the new sentencing proceedings. 468 N.J. Super. at 47-48. But we explained:

> This is not intended to mean cases in the pipeline in which a youthful defendant was sentenced before October 19, 2020, are automatically entitled to a reconsideration based on the enactment of the statute alone. Rather, it means where, for a reason unrelated to the adoption of the statute, a youthful defendant is resentenced, he or she is entitled to argue the new statute applies.

---

[2] We are mindful the Court has granted certification in State v. Lane, No. A-0092-20 (App. Div. Mar. 23, 2021), in which the pure legal question before the Court is whether, and if so, to what extent, N.J.S.A. 2C:44-1(b)(14) applies retroactively. Unless and until such time the Court holds to the contrary in Lane, we abide by our holding in Bellamy.

[Id. at 48.]

Also, in Tormasi, we held the adoption of mitigating factor fourteen does not provide a basis to grant a new sentencing hearing because the factor relates to the weight of the sentencing, a matter of excessiveness, not legality, and "excessive [sentence arguments] must be raised on direct appeal." 466 N.J. Super. at 67.

In sum, the new statutory mitigating factor does not retroactively apply to defendant's 2003 convictions, and because he does not argue that any independent basis unrelated to mitigating factor fourteen warrants a resentencing, we perceive no reason to remand this matter for resentencing.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0270-19