**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4823-16T1

R.L.U.,

       Plaintiff-Respondent,

v.

J.P.,

       Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **December 4, 2018**
>
> **APPELLATE DIVISION**

Submitted October 11, 2018 – Decided December 4, 2018

Before Judges Simonelli, Whipple and DeAlmeida.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FV-02-1615-17.

DeGrado Halkovich, LLC, attorneys for appellant (Adamo Ferreira and Felicia Corsaro, on the brief).

Respondent has not filed a brief.

The opinion of the court was delivered by

WHIPPLE, J.A.D.

Defendant, J.P., appeals from an April 19, 2017 order granting a final protective order against him pursuant to the Sexual Assault Survivor Protection Act (SASPA), N.J.S.A. 2C:14-13 to -21. For the reasons that follow, we reverse.

In 2005, defendant pled guilty to endangering plaintiff, R.L.U., when she was eleven-years-old. N.J.S.A. 2C:24-4(a). Defendant was sentenced to a three-year suspended term and parole supervision for life. He was ordered to have no contact with plaintiff and was required to register under Megan's Law.

On March 13, 2017, plaintiff was working at a convenience store when defendant walked in and approached her for the first time since 2005. Defendant allegedly yelled, "he could not believe they let people like [her] work there," "she knew who the fuck he was," "that people like her ruin people's lives," "he knew the owner and was going to get her fired," and as he was leaving said, "don't worry, I got you homie." Ten days later, defendant returned to the convenience store, came up to the glass door, stared at plaintiff for five seconds, and then left. Plaintiff called the police who advised her to seek a restraining order under SASPA. The police also issued a municipal court summons charging defendant with harassment.

On March 27, 2017, plaintiff was granted a temporary order of protection pursuant to SASPA. On April 19, 2017, a Family Part judge issued a final protective order following a two-day hearing. Prior to the Family Part judge

2

hearing testimony from either party, defendant moved to dismiss, arguing SASPA, as applied, violated the ex post facto clause of the United States and New Jersey Constitutions. The Family Part judge denied the motion, reasoning SASPA was a civil statute designed to protect sexual assault victims and did not violate the ex post facto clause. Thereafter, having heard credible testimony from plaintiff that defendant had intercourse with her in 2005, the Family Part judge concluded the 2005 intercourse was a sexual assault and was a predicate act triggering the right to SASPA protection. On April 19, 2017, the court entered an order of protection. Consequently, the entry of such order against defendant constituted a parole violation, which triggered the revocation of defendant's parole.[1]

On June 21, 2017, the Family Part judge denied defendant's motion for reconsideration. This appeal followed. On July 14, 2017, we denied defendant's application for a stay pending appeal.

---

[1] The record only contains a Special Report of the Division of Parole ordering defendant be held pending a probable cause hearing. The circumstances of arrest findings include the issuance of the final restraining order as well as violations of Rules 16 and 18 of the parole supervision for life certificate. Based upon the record, we do not know the parameters of the aforementioned rules or if defendant's parole revocation was also based upon a charge of violating the sentencing provision that defendant have no contact with the plaintiff. In any event, the circumstances surrounding defendant's parole revocation are not before us.

3

On appeal, defendant argues the Family Part judge erred by entering a SASPA order because SASPA requires a predicate act to have occurred after its enactment, not before. He argues the protective order imposed an ex post facto penalty and SASPA was unconstitutionally applied.

We are constrained to agree with defendant's statutory interpretation argument and therefore do not reach his constitutional argument. SASPA cannot be used to impose a restraining order on defendant based on conduct that occurred before SASPA's effective date. SASPA does not permit such retroactive application. We do not fault the good intentions of the Family Part judge; however, the court's reliance upon the 2005 assault as a predicate for the 2017 order of protection was error.

"We have a strictly limited standard of review from the fact-findings of the Family Part judge." N.J. Div. of Youth & Family Servs. v. I.H.C., 415 N.J. Super. 551, 577 (App. Div. 2010). We defer to the factual findings of the Family Part judge because of her opportunity to make first-hand credibility judgments about the witnesses who appeared on the stand. N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 342-43 (2010) (quoting N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)). However, we review questions of law de novo. Smith v. Millville Rescue Squad, 225 N.J. 373, 387 (2016).

4

Signed into law on November 9, 2015, SASPA was intended by the Legislature to expand the remedies available to victims of sexual violence. N.J.S.A. 2C:14-13 to -21; Senate Judiciary Committee, Sexual Assault Survivor Protection Act of 2015, S. 2164-4078 (N.J. 2015) (hereinafter Senate Judiciary Report). Prior to SASPA, victims of sexual violence could only obtain a restraining order under the Prevention of Domestic Violence Act of 1991 (PDVA), N.J.S.A. 2C:25-17 to -35. However, the PDVA defined "victim of domestic violence" as: a spouse, former spouse, a person with whom the defendant had a child in common, or a person with whom the defendant had a dating relationship. N.J.S.A. 2C:25-19(d). This meant a person subjected to sexual violence in a random encounter or in less than a dating relationship had no way to obtain a restraining order. SASPA was intended to fill this void.

SASPA provides:

> Any person alleging to be a victim of nonconsensual sexual contact, sexual penetration, or lewdness, or any attempt at such conduct, and who is not eligible for a restraining order as a "victim of domestic violence" as defined by [the PDVA], may . . . file an application with the Superior Court . . . alleging the commission of such conduct or attempted conduct and seeking a temporary protective order.
>
> [N.J.S.A. 2C:14-14(a)(1).][2]

---

[2] "'Sexual contact' 'means an intentional touching by the victim or actor, either directly or through clothing, of the victim's or actor's intimate parts for the purpose of degrading or humiliating the victim or sexually arousing or sexually

A Superior Court judge can issue an emergency ex parte temporary protective order "upon good cause shown." N.J.S.A. 2C:14-15(d). Within ten days, the trial judge can conduct a hearing and issue a final protective order if supported by a preponderance of the evidence. N.J.S.A. 2C:14-16(a). A final protective order requires a finding of nonconsensual sexual contact, penetration, or lewdness, and "the possibility of future risk to the safety or well-being of the victim." Senate Judiciary Report.

Thus, SASPA protects victims of unwanted sexual contact or lewd acts or attempts to commit the same. A person cannot seek protection against words, threats, or sexual harassment alone under SASPA. Here, the trial court found plaintiff's account credible and defendant admitted speaking to her. It is clear plaintiff felt threatened by the encounters and the court was concerned for the future risk to plaintiff's safety and well-being; however, there is no evidence defendant made or attempted to make physical contact with plaintiff. Thus, the question is whether defendant's 2005 sexual assault can be the basis of a SASPA order. We conclude it cannot.

---

gratifying the actor.'" N.J.S.A. 2C:14-14(a)(1). "'Sexual penetration' 'means vaginal intercourse, cunnilingus, fellatio or anal intercourse between persons or insertion of the hand, finger or object into the anus or vagina either by the actor or upon the actor's instruction.'" Ibid. "'Lewdness' 'means the exposing of the genitals for the purpose of arousing or gratifying the sexual desire of the actor or of any other person.'" Ibid.

6

"Generally, newly enacted laws are applied prospectively." Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 387 (2016). "This approach is based on long-held notions of fairness and due process . . . ." Ibid. (quoting Cruz v. Cent. Jersey Landscaping, Inc., 195 N.J. 33, 45 (2008)). One can overcome this presumption by demonstrating the Legislature intended retroactive application. The question then becomes whether enforcement of a retroactive law will "unconstitutional[ly] interfere[] with 'vested rights' or will result in a 'manifest injustice.'" Ibid. (quoting Twiss v. State, 124 N.J. 461, 467 (1991)).

Legislative intent of retroactivity can be shown: "(1) when the Legislature expresses its intent that the law apply retroactively, either expressly or implicitly; (2) when an amendment is curative; or (3) when the expectations of the parties so warrant." Ardan v. Bd. of Review, 231 N.J. 589, 610 (2018) (quoting James v. N.J. Mfrs. Ins. Co., 216 N.J. 552, 563 (2014)). At least one source of intent must be shown before a statute can be given retroactive effect. Cruz, 195 N.J. at 46. Legislative intent may be observed expressly in the statute or implicitly in legislative history showing retroactive application is "the most sensible interpretation." Johnson, 226 N.J. at 388. "A statute is curative 'if it is designed to merely carry out or explain the intent of the original statute[,]' in that its purpose is 'to remedy a perceived imperfection in or misapplication of a statute and not to alter the intended scope or purposes of the original act.'" Ibid.

7

(alteration in original) (quoting Nelson v. Bd. of Educ., 148 N.J. 358, 370 (1997)). In absence of legislative intent, courts should examine whether the parties expected the law to apply retroactively. James, 216 N.J. at 565.

In a similar context, in D.C. v. F.R., we concluded the PDVA applied prospectively, not retroactively. 286 N.J. Super. 589, 604-07 (App. Div. 1996). In 1994, the PDVA's definition of "victim of domestic violence" was expanded to include persons subjected to violence by persons he or she dated. Id. at 597. D.C. involved domestic violence that occurred in 1993 in a dating relationship, prior to the amendment going into effect. Id. at 598-99. We held instances of domestic violence that occurred before the amendment was passed were not covered by the PDVA, but an act that occurred in 1994 was grounds for entry of an order. Id. at 607.

The text of SASPA makes no mention of retroactivity and our review of SASPA's legislative history reveals no suggestion retroactive application was intended. To the contrary, the Legislature took a distinctly prospective approach by providing SASPA would not "take effect [until] the 180th day following enactment." L. 2015, c. 147, § 11. There is nothing to suggest "retroactive application may be necessary to make the statute workable or to give it the most sensible interpretation." Gibbons v. Gibbons, 86 N.J. 515, 522 (1981); see also Johnson, 226 N.J. at 388. Nor is SASPA curative. "To be 'curative,' a statutory

8

provision must be 'designed to remedy a perceived imperfection in or misapplication of a statute.'" Ardan, 231 N.J. at 611 (internal quotations omitted) (quoting James, 216 N.J. at 564). "[A]n amendment is curative if it does 'not alter the act in any substantial way, but merely clarifie[s] the legislative intent behind the [previous] act.'" Ibid. (alterations in original). "Generally, curative acts are made necessary by inadvertence or error in the original enactment of a statute or in its administration." Ibid. Here, the statute was enacted to expand remedies, not correct specified defects.

Furthermore, in this case, the parties did not expect SASPA to apply retroactively. Plaintiff's SASPA application listed defendant's acts of harassment and intimidation, but not an act or attempt of physical contact. Because of his 2005 guilty plea, defendant was subject to conditions of parole supervision for life and a no-contact order, but he had no reason to expect a future, collateral consequence of his crime.

Therefore, the court erred in concluding defendant's 2005 sexual assault served as the predicate act for a SASPA order. Defendant's actions in the convenience store were not acts or attempts at nonconsensual sexual contact with plaintiff. Thus, we are constrained to reverse. We need not reach defendant's constitutional arguments under the ex post facto clause for the

9

proper disposition of this matter.  See O'Keefe v. Passaic Valley Water Comm'n, 132 N.J. 234, 240 (1993).

 Reversed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4823-16T1