# **RECORD IMPOUNDED**

## *NOT FOR PUBLICATION WITHOUT THE*
## *APPROVAL OF THE APPELLATE DIVISION*

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1091-18T2

I.R.S.,

     Plaintiff-Respondent,

v.

R.G.F.,

     Defendant-Appellant.

_____

> Argued November 7, 2019 – Decided December 12, 2019
>
> Before Judges Koblitz, Whipple and Gooden Brown.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FV-09-0249-19.
>
> James R. Lisa argued the cause for appellant.
>
> Erica Hernández DeLuna argued the cause for respondent (Northeast New Jersey Legal Services, Inc., attorneys; Erica Hernández DeLuna, of counsel and on the brief).

PER CURIAM

Defendant R.G.F. appeals from the October 26, 2018 Family Part order, which was amended on October 30, 2018 and again on November 2, 2018, granting plaintiff I.R.S. a final restraining order (FRO) against him, pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. Defendant argues the court erred in finding the preponderance of the evidence demonstrated that plaintiff was in fear of him and an FRO was warranted. We disagree and affirm.

Plaintiff and defendant married in July 2012 and their twins were born two years later. In December 2016, plaintiff and defendant separated and defendant moved out of the apartment. Two years later, both sought FROs

Plaintiff testified at the domestic violence trial that, following the parties' separation, they appeared in family court to decide on parenting time, child support, and spousal support. During those proceedings, plaintiff expressed her concerns to the judge that defendant was illegally entering her home. Plaintiff suspected defendant was entering her home to steal her documents and hide recording devices. At these proceedings, defendant presented documents to the judge, such as plaintiff's citizenship certificate, which plaintiff said she never gave to him.

Plaintiff found two recording devices in her apartment. She found the first one in March 2017, hidden in a pair of defendant's socks placed under the love seat

in the living room. The device had more than forty-eight hours of recordings. Plaintiff filed a police report against defendant and changed the locks to her apartment. The second recording device was found in the summer of 2017 inside plaintiff's radiator. It had twenty-six hours of recordings. Plaintiff did not file a police report this time, but she did change the locks again. Plaintiff testified that she asked defendant about the recording devices, and while he admitted he had placed them inside her apartment, he refused to tell the police or the court the truth.

Plaintiff was suspicious about defendant breaking into her home because she found things out of place. When she confronted defendant, he told her he had the right to know where she is and he can come to the apartment whenever he wants. While plaintiff told defendant she wanted him to stay away, she also relied on him to complete certain tasks. For example, plaintiff invited defendant to her apartment to fix her computer and occasionally accepted rides from him.

On July 17, 2018, plaintiff installed security cameras in her kitchen and living room. Two days later, on July 19, the cameras recorded defendant entering plaintiff's apartment through her kitchen window from the fire escape around 10 a.m. The video showed that upon entering plaintiff's apartment, defendant walked towards her bedroom. While no cameras were installed in her bedroom, the video captured defendant returning to the kitchen with a document in his hand, which he folded up

and placed in his pocket. Defendant looked inside a bag in the living room and then left the apartment the same way he entered, approximately ten minutes later. Plaintiff received a TRO the following day.

Plaintiff's TRO was amended on July 27, 2018 to reflect that defendant called plaintiff's father and friend to ask them to pressure plaintiff to dismiss the restraining order. Plaintiff's amended TRO also included information that on July 8, 2018, defendant was parked in front of plaintiff's apartment building, despite not living in the area.

Both parties appeared before the judge to be heard on their cross-applications for FROs.[1] During the four-day trial, the judge heard from plaintiff, defendant, and three of defendant's witnesses.

"We have a strictly limited standard of review from the fact-findings of the Family Part judge." R.L.U. v. J.P., 457 N.J. Super. 129, 134 (App. Div. 2018) (quoting N.J. Div. of Youth & Family Servs. v. I.H.C., 415 N.J. Super. 551, 577 (App. Div. 2010)). Because a Family Part judge "possess[es] special expertise in the field of domestic relations," we defer to the Family Part judge's factual findings. Cesare v. Cesare, 154 N.J. 394, 412-13 (1998). Furthermore, we defer because Family Part judges have the "opportunity to make first-hand credibility judgments

---

[1] Defendant does not appeal from the dismissal of his TRO after trial.

about the witnesses who appeared on the stand." R.L.U., 457 N.J. Super. at 134. Therefore, when considering an FRO issued by the Family Part, we "grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." D.N. v. K.M., 429 N.J. Super. 592, 596 (App. Div. 2013). We may, however, disturb the factual findings and legal conclusions of the trial judge if we are "convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). Questions of law are reviewed de novo. R.L.U., 457 N.J. Super. at 134.

Defendant argues the trial court erred in finding plaintiff proved by a preponderance of the evidence that an FRO was warranted. Defendant concedes that his relationship with plaintiff "was not stable but rather somewhat tedious and problematic." However, defendant asserts that the record does not support a finding that plaintiff was in immediate danger or that protection was required to prevent further abuse. While defendant admits he entered plaintiff's home through the kitchen widow, citing Kamen v. Egan, 322 N.J. Super. 222, 228-29 (App. Div. 1999), he claims the act "was unaccompanied by violence or a threat of violence."

A-1091-18T2

The PDVA "is intended to assist those who are truly the victims of domestic violence." Silver v. Silver, 387 N.J. Super. 112, 124 (App. Div. 2006) (quoting Kamen, 322 N.J. Super. at 229). Domestic violence generally describes "a pattern of abusive and controlling behavior." Id. at 128. Mere unpleasant exchanges are not covered by the PDVA because the PDVA "is not a primer for social etiquette and should not be used as a sword to wield against every unpleasant encounter or annoying interaction that occurs between household members." R.G v. R.G., 449 N.J. Super. 208, 227 (App. Div. 2017) (quoting Bresocnik v. Gallegos, 367 N.J. Super, 178, 181 (App. Div. 2004)). We have expressed concern "that the Act may be misused in order to gain advantage in a companion matrimonial action or custody or visitation issue." Silver, 387 N.J. Super. at 124 (quoting Kamen, 322 N.J. at 229).

To obtain an FRO the plaintiff must prove by a preponderance of the evidence that: (1) she "has been subjected to domestic violence by a spouse, former spouse, or any other person who is a present household member or was at any time a household member . . . or a person with whom the victim has a child in common," N.J.S.A. 2C:25-19(d); (2) "one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred," Silver, 387 N.J. Super. at 125; and (3) a restraining order "is necessary . . . to protect the victim from an immediate danger or to prevent further abuse," id. at 127.

No dispute exists that the parties had a familial relationship, thereby satisfying the first element. See N.J.S.A. 2C:25-19(d). The second element requires the court to determine whether a person has been subjected to at least one of the nineteen predicate offenses listed in the PDVA. Silver, 387 N.J. Super. at 125-126. Plaintiff alleged the predicate offenses of burglary, N.J.S.A. 2C:18-2, criminal trespass, N.J.S.A. 2C:18-3, and harassment, N.J.S.A. 2C:33-4. Burglary occurs when a person enters or "surreptitiously remains" in a structure with the intent to commit an offense. N.J.S.A. 2C:18-2(a)(1)-(2). Criminal trespass occurs when "[a] person . . . knowing that he is not licensed or privileged to do so, . . . enters or surreptitiously remains" in a place he is not supposed to be. N.J.S.A. 2C:18-3(a). Harassment occurs when a person "[e]ngages in any . . . course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy . . . [another] person." N.J.S.A. 2C:33-4(c).

To determine whether the second element was satisfied, the trial judge focused on the evidence of the security camera footage and plaintiff's testimony regarding the recording devices. Defendant explained that he entered plaintiff's apartment upon her request to complete some housework. Despite having a key, he said he normally entered the apartment through the kitchen window from the fire escape.

The trial judge did not find defendant's explanation believable, noting defendant arrived with no tools to complete the alleged housework.

Furthermore, the judge believed plaintiff's testimony that the two recording devices hidden in her apartment were placed there by defendant. Although defendant denied doing so, the judge explained: "There's no doubt in my mind that those incidents were done by the defendant with the purpose to stake claim and control [plaintiff]. Certainly [defendant did so] with the purpose to alarm and harass her . . . ." The judge found by a preponderance of the evidence that defendant committed the predicate acts of burglary, criminal trespass, and harassment and that element two of the analysis was therefore satisfied.

The third element requires the plaintiff to prove that an FRO is needed to protect the defendant. Silver, 387 N.J Super. at 126-127. "This requirement reflects the reality that domestic violence is ordinarily more than an isolated aberrant act and incorporates the legislative intent to provide a vehicle to protect victims whose safety is threatened." Id. at 124 (quoting Corrente v. Corrente, 281 N.J. Super. 243, 248 (App. Div. 1995)). While a history or pattern of abuse is a "classic characteristic of domestic violence," an order of protection may be granted "in the absence of such a pattern where there is 'one sufficiently egregious action.'" Id. at 128 (quoting Cesare,

154 N.J. at 402). In other words, a past history of abuse is not required. Cesare, 154 N.J. at 402.

In evaluating element three, the trial judge explained that because defendant continued to harass plaintiff and trespass into her home, plaintiff felt scared, and thus an FRO was warranted. Defendant's behavior went beyond an "unpleasant encounter" or "ordinary domestic contretemps." See R.G., 449 N.J. Super. at 227; see also Kamen, 322 N.J. Super. at 228. He twice hid recording devices in plaintiff's home and stole her documents. The judge was rightfully concerned about defendant's access to plaintiff's personal materials and found that an FRO was necessary to protect plaintiff. The trial court did not err in "find[ing] that these events [were] so egregious in nature, so damaging," that an FRO was necessary to protect plaintiff from defendant.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1091-18T2