# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4648-18T3

A.B.,

      Plaintiff-Respondent,

          v.

D.M.O.,

      Defendant-Appellant.

_____

Submitted May 20, 2020 – Decided June 8, 2020

Before Judges Koblitz and Mawla.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FV-16-1688-19.

Law Offices of Ian J. Hirsch & Associates, LLC, attorneys for appellant (Ian J. Hirsch and Borce Martinoski, on the brief).

Respondent has not filed a brief.

PER CURIAM

Defendant D.M.O.[1] appeals from the May 29, 2019 Family Part order, granting plaintiff A.B. a final restraining order (FRO), pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. Defendant argues that plaintiff presented insufficient evidence of the predicate acts of harassment, N.J.S.A. 2C:33-4, and cyber harassment, N.J.S.A. 2C:33-4.1, and that plaintiff was in need of a FRO. Because the court's analysis of the second prong of the test announced in Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006), was incomplete and failed to consider the relevant N.J.S.A. 2C:25-29(a) factors, we reverse.

Plaintiff, now seventy-two years old, and defendant, now forty-one years old, were involved romantically for about four years, including the two years they lived together in plaintiff's home. Plaintiff owns an estate, which includes a farm and dog kennel business. He testified that defendant "came to [him] when she . . . [was] going through a divorce, she had no money [and] she had no place to go." After she "begged [him] to take her in," plaintiff allowed defendant to rent a barn. She was a tenant there for two years, paying her rent timely.

---

[1] We use initials to protect the identity of victims of domestic violence and to preserve the confidentiality of these proceedings. R. 1:38-3(d)(9) to -(10).

A-4648-18T3

Defendant then moved into plaintiff's house with her two children in 2017. Plaintiff testified he "tried to be a father to these children," and he "lend[ed] [defendant] money all the time" to support her and her children.

In March 2019, they separated when plaintiff left his residence. Recognizing that defendant's children "ha[d] to finish the school year," plaintiff let defendant and her children stay in his home while he lived "about a mile up the street" with his secretary and her boyfriend. Plaintiff testified that he was "not living in [his] house, cause [he was] afraid for [his] life with [defendant]."

On May 8, 2019, the parties argued over defendant parking a horse trailer in the driveway of plaintiff's home. Plaintiff took issue with defendant "bringing the trailer to the residential area" and worried that his grass would be ruined. When plaintiff saw defendant trying to park the trailer, he stopped on the driveway apron to block defendant. Defendant got out of her vehicle to ask plaintiff to move, but when he refused, she allegedly "started hollering and screaming" and called him a "f'in piece of shit." Defendant's daughter also got out of the vehicle and told plaintiff to leave her mom alone. Defendant told plaintiff she was calling the police, so he moved out of the way to let her park.

A-4648-18T3

On May 10, 2019, plaintiff obtained a temporary restraining order (TRO) against defendant alleging harassment and cyber harassment. In the TRO, plaintiff stated that in addition to the trailer incident, defendant filed a false animal abuse complaint against him with the local health department and posted false comments on Facebook about his business, alleging that he medicated the dogs and did not walk or feed them enough. Under the prior history of domestic violence section on the TRO, plaintiff reported that in March 2019, defendant touched his buttocks approximately five times without his consent.

The FRO trial was scheduled for May 20, 2019, but on that date the court issued a continuance order, stating that "pla[intiff's] failure to appear at the next [trial] may result in dismissal." On May 29, 2019, plaintiff appeared pro se while defendant was represented by counsel at trial.

Both parties testified. While defendant denied calling plaintiff a "f-in piece of shit" or touching him without his consent, she admitted to posting negative comments about plaintiff's dog kennel business. She explained that she saw about "[sixty] comments" on Facebook about defendant's business, so she "added a comment to it as well" because she "wanted people to be aware of what [she] knew" as "a firsthand witness to everything."

A-4648-18T3

Plaintiff and defendant both introduced as exhibits images of these comments, but the court did not admit them into evidence. Although plaintiff brought his kennel manager and defendant brought her daughter to testify, the court did not hear their testimony, concluding "it [was] not going to help the [c]ourt make a decision."

The court issued an oral decision granting plaintiff a FRO. It emphasized that because the parties dated and cohabitated, the PDVA was applicable. While recognizing that harassment and cyber harassment do not cover injury to an individual's business reputation, the court nevertheless found that plaintiff established those predicate acts of violence because defendant's motivation in harming plaintiff's business, "had to be for the purpose of emotional distress" and defendant used offensive language against him. The court determined that although plaintiff initiated this domestic violence matter as a means to evict defendant from his home after the dismissal of his landlord/tenant action, defendant's actions and testimony were "concerning," particularly her apparent admission that because she and plaintiff did not have a written agreement, she was not going to leave his home without a satisfactory arrangement.

A-4648-18T3

The court noted that defendant had previously filed a domestic violence complaint against plaintiff, but the application was denied because defendant appeared to "us[e] [her] domestic violence complaint as a sword, and not as a shield." Finding "serious concerns" as to defendant's intentions, motivation and credibility in contrast to plaintiff who was "very credible[]," the court concluded that a FRO was required to protect plaintiff from further harm or abuse. The court also ordered defendant to vacate plaintiff's home by June 30, 2019.

"We have a strictly limited standard of review from the fact-findings of the Family Part judge." R.L.U. v. J.P., 457 N.J. Super. 129, 134 (App. Div. 2018) (quoting N.J. Div. of Youth & Family Servs. v. I.H.C., 415 N.J. Super. 551, 577 (App. Div. 2010)). Because a Family Part judge "possess[es] special expertise in the field of domestic relations," we defer to those factual findings. Cesare v. Cesare, 154 N.J. 394, 412 (1998). We defer also because Family Part judges have the "opportunity to make first-hand credibility judgments about the witnesses who appeared on the stand." R.L.U., 457 N.J. Super. at 134. When reviewing an FRO we "grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." D.N. v. K.M., 429 N.J. Super. 592, 596 (App. Div. 2013).

A-4648-18T3

We may, however, disturb the factual findings and legal conclusions of the trial court if we are "convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). Questions of law are reviewed de novo. R.L.U., 457 N.J. Super. at 134.

"[D]omestic violence is a term of art which defines a pattern of abusive and controlling behavior injurious to its victims." Jutchenko v. Jutchenko, 283 N.J. Super. 17, 20 (App. Div. 1995) (quoting Peranio v. Peranio, 280 N.J. Super. 47, 52 (App. Div. 1995)). The PDVA defines domestic violence as the occurrence of at least one of nineteen specific offenses. N.J.S.A. 2C:25-19(a). The court found defendant committed two such offenses.

### A. Harassment.

A person commits the offense of harassment

> if, with purpose to harass another, he [or she]:
>
> a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or

c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

[N.J.S.A. 2C:33-4(a) to -(c).]

When determining whether a defendant acted with the purpose to harass, a court must be mindful that "a party may mask an intent to harass with what could otherwise be an innocent act." J.D. v. M.D.F., 207 N.J. 458, 488 (2011). "A finding of a purpose to harass may be inferred from the evidence presented," and a court may use "[c]ommon sense and experience" to determine a defendant's intent. State v. Hoffman, 149 N.J. 564, 577 (1997). Courts should consider the totality of the circumstances to determine whether an underlying act of harassment in the context of domestic violence has occurred. Id. at 584.

Defendant argues on appeal that even if she did call plaintiff a "f-in piece of shit," that comment in itself does not constitute domestic violence. Having found plaintiff more credible than defendant, the court relied upon plaintiff's testimony to determine "it appears to be language that [defendant] uses, and it appears to be abusive and harassing." The court emphasized that defendant's acknowledgement that she posted negative comments about plaintiff's business on Facebook made "plain that her intention here [was] to

harass and abuse [plaintiff]. [The posts] appear[ed] not to be intended to offer friendly warnings to people. In fact, she[] . . . complain[ed] about the business that she testifie[d] she managed." The court found that the offensive statement coupled with the Facebook posts, under all of the circumstances of the parties' estrangement satisfied the elements of harassment.

The trial court found that defendant selecting this time to raise concerns online about plaintiff's dog kennel business after being aware of the alleged conditions for about six years, demonstrates that she acted with a purpose to harass. The trial court found "it[] [was] more likely than not that [defendant] engaged in behavior repeatedly by posting, and in the driveway by using rude and offensive language."

The court acted within its discretion when determining that given "the pride that [plaintiff] has . . . in the services that he offers [and] the pride that he has in his reputation," that he explained took him ten years to build, defendants' negative Facebook posts about plaintiff's business were alarming and annoying to him, especially because plaintiff asserted that defendant's comments were "entirely untrue." Thus, plaintiff proved harassment under N.J.S.A. 2C:33-4 subsections (a) and (c).

A-4648-18T3

## B. Cyber Harassment.

Cyber harassment occurs when a person, acting with a purpose to harass, "communicat[es] in an online capacity . . . and . . . (2) knowingly sends, posts, comments, requests, suggests, or proposes any lewd, indecent, or obscene material to or about a person with the intent to emotionally harm a reasonable person or place a reasonable person in fear." N.J.S.A. 2C:33-4.1(a)(2).

The court emphasized that although "there's nothing [in the statute] about using the internet to impair someone's business reputation, only to harm someone emotionally," it "suppose[d]" the statute could be "strain[ed] to make the argument that [the Facebook] posts were designed to cause harm to [plaintiff's] property, and therefore, cause him emotional harm." Because "certainly harming a business had to be done for the purpose of emotional distress," the court found plaintiff proved by the preponderance of the evidence that defendant cyber harassed him.

The court, however, failed to account for the "lewd, indecent, or obscene material" element of the statute. See id. Without a showing that defendant's Facebook posts satisfied one of those characteristics, causing emotional harm to plaintiff was insufficient to satisfy a finding of cyber harassment. See State v. Carroll, 456 N.J. Super. 520, 534-35 (App. Div. 2018) (holding "the trial

10

court erred in finding probable cause for the cyber-harassment charge" because, despite "[t]he Facebook posts [being] indisputably coarse and insulting," they did not constitute "lewd, indecent, or obscene material"). Insufficient evidence was presented to support the predicate offense of cyber harassment. Only one predicate offense, however, is required to enter an FRO and plaintiff presented sufficient credible evidence for a finding of harassment, if not cyber harassment.

## C. Need for an FRO.

When deciding whether to grant a FRO, the trial court has a "two-fold" task. Silver, 387 N.J. Super. at 125. A court must first determine whether the plaintiff can demonstrate by a preponderance of the evidence that the defendant has committed a predicate act of violence under N.J.S.A. 2C:25-19(a). Ibid. If a predicate act is established, the court must then determine "whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C: 25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse." Id. at 127.

Under the second prong of Silver, a court "shall consider but not be limited to" six factors, of which three are relevant here:

11

(1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;

(2) The existence of immediate danger to person or property;

(3) The financial circumstances of the plaintiff and defendant.

[N.J.S.A. 2C:25-29(a)(1) to -(3).]

When addressing this prong in its oral decision, the court noted it was "frankly struggling" to determine whether plaintiff needed a FRO. The court explained that defendant "appear[ed] to be saying . . . [he was] using this [domestic violence matter] as a way to evict [defendant] from [his] home," but "[o]n the other hand, [the court found] a clear pattern of conduct by [plaintiff] that [was] designed to cause injury, harm, emotional and otherwise to [plaintiff]."

The court interpreted plaintiff's testimony that she would "need help to move out" by July 1 because she "can't do it alone" to mean that plaintiff had "no intention of leaving [plaintiff's] home" and was "going to continue to stay . . . [and] take advantage of what [plaintiff was] permitting [her] to take advantage of . . . by staying." This testimony "sort of capped it for [the court]," and was the final reason why the FRO was granted.

A-4648-18T3

Although an FRO may be granted "in the absence of . . . a pattern [or history of abuse] where there is 'one sufficiently egregious action,'" Silver, 387 N.J. Super. at 128 (quoting Cesare, 154 N.J. at 402), here the offense of harassment was not sufficiently egregious. The court failed to consider the relevant N.J.S.A. 25-29(a) factors in its decision and thus, without further findings, its determination to issue an FRO was a misguided exercise of discretion.

We therefore remand for the court to hold a hearing, with the parties' participation, to determine whether an FRO is necessary after considering the appropriate statutory and other factors. The court may choose to accept additional testimony. We note that plaintiff did not participate in this appeal. Having removed defendant from his premises through the domestic violence proceedings a year ago, plaintiff may no longer believe he is in need of an FRO.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4648-18T3