**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1875-19
A-3530-19

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

ERIC PATTERSON,

      Defendant-Appellant.

_____

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

RAHSAAD J. NORWOOD,

      Defendant-Appellant.

_____

      Argued (A-3530-19) and Submitted (A-1875-19)
      October 13, 2021 – Decided February 28, 2022

      Before Judges Currier, DeAlmeida and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 16-09-1175, and Atlantic County, Indictment No. 18-10-1800.

Joseph E. Krakora, Public Defender, attorney for appellant Eric Patterson in A-1875-19 (Susan L. Romeo, Assistant Deputy Public Defender, of counsel and on the brief).

Susan L. Romeo, Assistant Deputy Public Defender, argued the cause for appellant Rahsaad Norwood in A-3530-19 (Joseph E. Krakora, Public Defender, attorney; Susan L. Romeo, of counsel and on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent State of New Jersey in A-1875-19 (Stephanie Davis Elson, Assistant Prosecutor, on the brief).

Steven K. Cuttonaro, Deputy Attorney General, argued the cause for respondent State of New Jersey in A-3530-19 (Andrew J. Bruck, Acting Attorney General, attorney; Steven K. Cuttonaro, of counsel and on the brief).

PER CURIAM

After guilty pleas in separate, unrelated cases, defendants Eric Patterson and Rahsaad Norwood were convicted of first-degree homicide and related charges. Patterson pled guilty to two counts of first-degree vehicular homicide and second-degree assault-by-auto. He was sentenced to two consecutive twelve-year sentences on the first-degree counts and a consecutive five-year term on the second-degree count for a total of twenty-nine years' imprisonment.

Norwood pled guilty to one count of first-degree aggravated manslaughter and was sentenced to twenty-five years' imprisonment.

We consolidated these matters to address both defendants' argument on appeal that N.J.S.A. 2C:44-1(b)(14), recently enacted by the Legislature, and which requires courts to consider a defendant's youth as a mitigating factor at sentencing in certain cases, should apply retroactively. This is Norwood's sole issue on appeal. Patterson also argues his sentencing court committed error when it: applied a rebuttable presumption in favor of consecutive sentences; improperly found aggravating factor three; and failed to consider the length of the individual terms on remand. We reject the arguments of both defendants as to all issues and affirm.

## I.

### A. State v. Patterson

On March 5, 2016, Patterson, age twenty-three at the time, bought and ingested phencyclidine (PCP), then drove his girlfriend's car from Jersey City towards North Bergen. While driving under the influence of PCP, he disregarded several stop signs and red lights. Patterson struck pedestrians Noel Herrera, Bryan Rodriguez, and Manuel Sanchez near Union High School when

he crossed the solid double-yellow line and drove on the sidewalk. Herrera and Rodriguez died as a result of the accident and Sanchez sustained a broken leg.

Patterson was charged with five counts: first-degree aggravated manslaughter for causing the death of Herrera, N.J.S.A. 2C:11-4(a); first-degree aggravated manslaughter for causing the death of Rodriguez, N.J.S.A. 2C:11-4(a); first-degree vehicular homicide for recklessly driving a vehicle within 1000 feet of a school and causing the death of Herrera, N.J.S.A. 2C:11-5(b)(3); first-degree vehicular homicide for recklessly driving a vehicle within 1000 feet of a school and causing the death of Rodriguez, N.J.S.A. 2C:11-5(b)(3); and second-degree aggravated assault by auto for causing serious bodily injury to Sanchez within 1000 feet of a school, N.J.S.A. 2C:12(1)(c)(3).

Before trial, Patterson pled guilty to two counts of first-degree vehicular homicide and one count of second-degree assault by auto. At sentencing, the State recommended consecutive twelve-year sentences for the vehicular homicide charges, subject to the No Early Release Act (NERA), and a consecutive five-year sentence for the assault by auto charge. Patterson asked the court to impose consecutive ten-year sentences on the homicide charges and a consecutive five-year sentence on the assault-by-auto charge. After considering the aggravating and mitigating factors, the sentencing court found

A-1875-19

aggravating factors three and nine applied to the case. In doing so, the court relied on Patterson's admission that his drug addiction went unaddressed for years, as well as his juvenile adjudication history.

Next, the court rejected mitigating factors seven and nine. In rejecting mitigating factor seven, the court reasoned that Patterson had "a prior delinquency." The court also found mitigating factor nine did not apply because the factor conflicted with aggravating factor three.

The court found the aggravating factors substantially outweighed the non-existent mitigating factors and sentenced Patterson to two consecutive twelve-year sentences for first-degree vehicular homicide subject to NERA and a consecutive sentence of five years on the assault-by-auto charge. Although the court imposed the three sentences consecutively, the court failed to place on the record the statement of reasons required under Yarbough.[1]

On appeal, Patterson argued the court failed to conduct a comprehensive Yarbough analysis when it imposed consecutive sentences. We agreed and then remanded for resentencing.[2]

---

[1] State v. Yarbough, 100 N.J. 627 (1985).

[2] State v. Patterson, No. A-4340-17 (App. Div. Jan. 9, 2019).

At resentencing, Patterson renewed his argument for ten-year sentences on the vehicular homicide charges and a consecutive five-year sentence on the assault by auto charge. He also sought three concurrent terms for each offense or, in the alternative, two consecutive terms on the homicide charges and a concurrent sentence of five years on the assault by auto charge.

The sentencing court rejected Patterson's argument. The court noted Patterson never argued for concurrent terms at the initial sentencing. The court stated that there was "some confusion as to the scope of the remand[,] and notably what the Appellate Division meant by 'that issue.'" The court found the remand was "about the consecutive versus concurrent" issue and not a reconsideration of the length of the individual terms. The court stated: "[t]here is no basis to modify the [twelve]-year sentence on counts [three] and [four] to [ten] years as defense counsel argues. It's just not before me right now."

Thereafter, the court reweighed the aggravating and mitigating factors and found that the aggravating factors substantially outweighed the mitigating factors. It next conducted a Yarbough analysis to determine whether the twelve-year sentences should run concurrently or consecutively. The court found that the crimes were not wholly independent of each other, they occurred "nearly simultaneously," and the circumstances indicated "a single period of aberrant

6

behavior." Therefore, the court noted that "three of the five factors" supported the imposition of concurrent terms.

Despite most factors supporting the imposition of concurrent terms, the sentencing court relied on our decision in State v. Locane, 454 N.J. Super. 98 (App. Div. 2018), to reimpose the three consecutive sentences. In Locane, we stated:

> [B]ecause of the very nature of a drunken driving collision that results in multiple victims, and the analytical structure of Yarbough, which heavily weighs the circumstances of an offense, such as multiple victims, a rebuttable presumption is created. Where there are multiple victims, the starting point of the sentence calculus is consecutive sentences . . . . The starting point . . . is that where a crash results in multiple victims, a judge begins from consecutive sentences and works down from there.
>
> [Id. at 133.]

The sentencing court concluded that here, as in Locane, the "rebuttable presumption of consecutive terms" applied where the accident resulted in the death of two teenagers and "serious injuries to a third." Relying upon the Locane rebuttable presumption as its starting point, the sentencing court imposed consecutive sentences on Patterson again.

Twelve months after Patterson was sentenced, the Legislature enacted N.J.S.A. 2C:44-1(b)(14), establishing a new mitigating factor that may apply in

7

the sentencing calculus if "[t]he defendant was under [twenty-six] years of age at the time of the commission of the offense." L. 2020, c. 110 (eff. Oct. 19, 2020).

On appeal, Patterson raises the following points:

I. THIS MATTER MUST BE REMANDED FOR A SECOND RESENTENCING BECAUSE THE REMAND COURT APPLIED A REBUTTABLE PRESUMPTION IN FAVOR OF CONSECUTIVE SENTENCES, WHICH THE NEW JERSEY SUPREME COURT HAS REJECTED.

II. THIS MATTER MUST BE REMANDED FOR RESENTENCING BECAUSE THE TRIAL COURT IMPROPERLY BASED ITS FINDINGS ON THE AGGRAVATING AND MITIGATING FACTORS IN LARGE PART ON ITS PERSONAL BELIEFS REGARDING DRUG ADDICTION, WHICH HAD NO SUPPORT IN THE RECORD AND WHICH ARE CONTRARY TO THE ENTIRE PREMISE OF NEW JERSEY'S STATEWIDE DRUG COURT PROGRAM.

III. THIS MATTER MUST BE REMANDED FOR RESENTENCING BECAUSE THE TRIAL COURT ERRONEOUSLY BELIEVED IT WAS PRECLUDED FROM CONSIDERING DEFENDANT'S RENEWED REQUEST FOR LESSER OR CONCURRENT TERMS AS PART OF THE YARBOUGH ANALYSIS.

IV. DEFENDANT'S SENTENCE SHOULD BE REVERSED AND THE MATTER REMANDED BECAUSE DEFENDANT IS ENTITLED TO HAVE THE COURT CONSIDER HIS YOUTH AS A

A-1875-19

MITIGATING FACTOR IN ACCORDANCE WITH P.L. 2020, CHAPTER 110.

1. THE OCTOBER 19, 2020, STATUTORY AMENDMENT TO THE N.J.S.A. 2C:44-1(B) LIST OF MITIGATING FACTORS.

2. DEFENDANT AND SIMILARLY SITUATED DEFENDANTS ARE ENTITLED TO A REMAND UNDER THE PROVISIONS OF THE SAVINGS STATUTE, N.J.S.A. 1:1-15, BECAUSE THE AMENDMENT: PERTAINED TO A MODE OF PROCEDURE, THE PROCEEDINGS ON THE INDICTMENT ARE ONGOING, AND A REMAND IS PRACTICABLE.

V. THE AMENDMENT TO N.J.S.A. 2C:44-1 SHOULD BE APPLIED TO DEFENDANT'S PENDING APPEAL UNDER THE TIME-OF-DECISION RULE, BECAUSE IT WAS AN AMELIORATIVE REVISION THAT THE LEGISLATURE ENACTED TO BE EFFECTIVE IMMEDIATELY.

B.  State v. Norwood

On August 9, 2018, Norwood, Michael McLoughlin, and other acquaintances were engaged in a dice game for money in front of an apartment building in Atlantic City.  During the game, Norwood won more money than McLoughlin.  After the dice game ended, Norwood left the area while McLoughlin stayed.  Soon thereafter, Norwood learned that McLoughlin was looking to buy marijuana from him.  Norwood further learned that McLoughlin

was upset over his dice game losses and intended to rob him to get his money back.

Due to his fear of being robbed, Norwood armed himself with a gun before going to the agreed-upon location where the drug buy was to take place. At the place of the sale, McLoughlin bent over to reach for something, which alarmed Norwood. Norwood then fired a single shot, striking McLoughlin in the head and killing him. Norwood was twenty-one years old at the time of the shooting.

On October 24, 2018, Norwood was charged with first-degree murder, N.J.S.A. 2C:11-3(a)(1)(2); second-degree unlawful possession of a handgun without a permit, N.J.S.A. 2C:39-5(b)(1); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); and second-degree certain persons not to have a weapon, N.J.S.A. 2C:39-7(b)(1). A little over fifteen months later, Norwood pled guilty to an amended charge of first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1).

At sentencing, Norwood argued that mitigating factor five, the victim induced or facilitated defendant's conduct, N.J.S.A. 2C:44-1(b)(5), and factor eight, defendant's conduct was unlikely to reoccur, N.J.S.A. 2C:44-1(b)(8), should apply because his actions prior to the incident showed he was trying to further his educational goals by enrolling at community college. However, the

10

court rejected the mitigating factor arguments, finding McLoughlin's provocation was "insufficient to mitigate . . . [Norwood]'s brazen and violent conduct" and that Norwood's criminal history projected a "violent trajectory."

The sentencing court found the aggravating factors substantially outweighed the non-existent mitigating factors and sentenced Norwood to twenty-five years imprisonment, subject to NERA. The remaining charges were dismissed.

The Legislature enacted N.J.S.A. 2C:44-1(b)(14) seven months after Norwood was sentenced.

On appeal, Norwood raises the following two points:

POINT I.

DEFENDANT'S SENTENCE SHOULD BE REVERSED AND THE MATTER REMANDED, BECAUSE DEFENDANT IS ENTITLED TO HAVE THE COURT CONSIDER HIS YOUTH AS A MITIGATING FACTOR IN ACCORDANCE WITH P.L. 2020, CHAPTER 110.

POINT II.

THE AMENDMENT TO N.J.S.A. 2C:44-1(b) SHOULD BE APPLIED TO DEFENDANT'S PENDING APPEAL UNDER THE TIME-OF-DECISION RULE, BECAUSE IT WAS AN AMELIORATIVE REVISION THAT THE LEGISLATURE ENACTED TO BE EFFECTIVE IMMEDIATELY.

11

II.

The Youth Mitigating Factor – N.J.S.A. 2C:44-1(b)(14)

We first address the common question. Both Norwood and Patterson argue their sentences should be vacated and that they should be sentenced in accordance with the newly enacted criteria set forth in N.J.S.A. 2C:44-1(b)(14), even though their respective sentences were handed down months before its enactment. We disagree.

The question of whether a newly enacted law applies retroactively "is a purely legal question of statutory interpretation" based on legislative intent. State v. J.V., 242 N.J. 432, 442 (2020) (quoting Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 386 (2016)). "To determine the Legislature's intent, we look to the statute's language and give those terms their plain and ordinary meaning . . . ." Ibid. (citing DiProspero v. Penn, 183 N.J. 477, 492 (2005)). If the statute's language clearly reflects the Legislature's intent, our review is complete. Id. at 443. However, when the statutory language is ambiguous and leads to more than one plausible interpretation, "we may resort to 'extrinsic interpretative aids, including legislative history,' to determine the statute's meaning." Ibid. (quoting State v. S.B., 230 N.J. 62, 68 (2017)).

A-1875-19

"When the Legislature does not clearly express its intent to give a statute prospective application, a court must determine whether to apply the statute retroactively." Ibid. (quoting Twiss v. State, Dep't of Treasury, Off. of Fin Mgmt., 124 N.J. 461, 467 (1991)). When dealing with criminal laws, courts presume that the Legislature intended them to have prospective application only. Ibid. Consistent with the presumption in favor of prospective application, our savings statute also "establishes a general prohibition against retroactive application of penal laws . . . ." State v. Chambers, 377 N.J. Super. 365, 367 (App. Div. 2005).

Our Supreme Court has recognized three exceptions to the presumption of prospective application. J.V., 242 N.J. at 444. Those exceptions apply when:

> (1) the Legislature provided for retroactivity expressly, either in the language of the statute itself or its legislative history, or implicitly, by requiring retroactive effect to "make the statute workable or to give it the most sensible interpretation"; (2) "the statute is ameliorative or curative"; or (3) the parties' expectations warrant retroactive application.
>
> [Ibid. (quoting Gibbons v. Gibbons, 86 N.J. 515, 522-23 (1981)).]

A curative change to a statute is limited to acts that "remedy a perceived imperfection in or misapplication of the statute." Pisack v. B & C Towing, Inc., 240 N.J. 360, 371 (2020) (quoting James v. N.J. Mfrs. Ins. Co., 216 N.J. 552,

564 (2014)). A curative change does not "alter the act in any substantial way, but merely clarifie[s] the legislative intent behind the [previous] act." Ibid. (alterations in original) (quoting James, 216 N.J. at 564).

An ameliorative statute "refers only to criminal laws that effect a reduction in a criminal penalty." Perry v. N.J. State Parole Bd., 459 N.J. Super. 186, 196 (App. Div. 2019) (citations omitted). To be considered for retroactive application, an ameliorative statute "must be aimed at mitigating a legislatively perceived undue severity in the existing criminal law." State in Int. of J.F., 446 N.J. Super. 39, 55 (App. Div. 2016) (quoting Kendall v. Snedeker, 219 N.J. Super. 283, 286 n.1 (App. Div. 1987)).

We find N.J.S.A. 2C:44-1(b)(14) is not curative because it does not remedy an imperfection or misapplication of a statute, nor does it clarify legislative intent; rather, it created a new mitigating factor for courts to consider when sentencing youthful offenders. See L. 2020, c. 110; see also In re D.C., 146 N.J. 31, 51 (1996). The new statute is ameliorative, however, the Legislature stated that the statute was to "take effect immediately." L. 2020, c. 110. It is well-settled that when the Legislature gives a statute an immediate or future enactment date, it intends to afford the newly enacted statute prospective application only. See Pisack, 240 N.J. at 370 (statute "take[s] effect

immediately" on the day of its enactment); J.V., 242 N.J. at 435 (statute applies in the future when the effective date is after the date of the statute's ratification). We are satisfied that principle applies here because "had the Legislature intended an earlier date for the law to take effect, that intention could have been made plain in the very section directing when the law would become effective." J.V., 242 N.J. at 445 (quoting James, 216 N.J. at 568). This clear, unambiguous statement by the Legislature leads us to conclude that they intended the law to be applied prospectively.

Applying these statutory construction principles to each case, the record shows Norwood had been sentenced seven months and Patterson sentenced more than twelve months before the effective date of L. 2020, c. 110. Consequently, we find neither defendant is entitled to retroactive application of the amended statute.

### III.

### Patterson's Remaining Claims

### A. Standard of Review

Turning to Patterson's remaining claims on appeal, we employ a deferential standard and "must not substitute [our] judgment for that of the sentencing court." State v. Fuentes, 217 N.J. 57, 70 (2014). The sentence must

therefore be affirmed unless (1) the trial court failed to follow the sentencing guidelines; (2) the court's findings of aggravating and mitigating factors were not based on competent and credible evidence in the record; or (3) "the [court's] application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."  Ibid. (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

In determining the appropriate sentence to impose within the statutory range, the sentencing court must first identify any relevant aggravating and mitigating factors set forth in N.J.S.A. 2C:44-1(a) and (b) and provide the evidential basis for each.  State v. Case, 220 N.J. 49, 64 (2014).  Thereafter, the court must balance those relevant aggravating and mitigating factors by qualitatively assessing each factor and assigning it appropriate weight given the nature of the case.  Fuentes, 217 N.J. at 72-73.  Findings of any factors "must be supported by competent, credible evidence in the record" to ensure that "[s]peculation and suspicion [do] not infect the sentencing process . . . ."  Case, 220 N.J. at 64.

## B. The Rebuttable Presumption

Patterson first argues the court incorrectly found a rebuttable presumption pursuant to Locane as part of its justification for imposing three consecutive sentences. We agree, but we find the error does not warrant reversal.

When defendants are subject to multiple sentences for more than one offense, the Code of Criminal Justice empowers trial court judges with the discretion to decide whether those sentences should run concurrently or consecutively. N.J.S.A. 2C:44-5(a)-(b). To promote sentencing uniformity while preserving a reasonable amount of discretion for the sentencing court, Yarbough established guidelines to assist judges in deciding whether to impose concurrent or consecutive sentences. State v. Liepe, 239 N.J. 359, 372 (2019) (citing State v. Carey, 168 N.J. 413, 422 (2001)).

Yarbough tells us:

> (1) there can be no free crimes in a system for which the punishment shall fit the crime;
>
> (2) the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision;
> (3) some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:
>
> > (a) the crimes and their objectives were predominantly independent of each other;

(b) the crimes involved separate acts of violence or threats of violence;

(c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;

(d) any of the crimes involved multiple victims;

(e) the convictions for which the sentences are to be imposed are numerous;

(4) there should be no double counting of aggravating factors; [and]

(5) successive terms for the same offense should not ordinarily be equal to the punishment for the first offense . . . .

[100 N.J. at 643-44.]

While the guidelines encourage sentencing uniformity, the Court has stressed "that the Yarbough guidelines are just that – guidelines." Carey, 168 N.J. at 427. Therefore, courts should apply the five factual inquiries of Yarbough "qualitatively, not quantitatively." Ibid. "[A] sentencing court may impose consecutive sentences even though a majority of the Yarbough factors support concurrent sentences." Id. at 427-28. See State v. Perry, 124 N.J. 128, 177 (1991) (upholding imposition of consecutive sentences despite four of Yarbough's five factors militated in favor of concurrent sentences).

In Patterson's resentencing, the court discussed Carey and its general proposition that "in vehicular homicide cases, the multiple-victims factor is entitled to great weight and should ordinarily result in the imposition of at least two consecutive terms when multiple deaths or serious bodily injuries have been inflicted upon multiple victims by the defendant." 168 N.J. at 429-30. The sentencing court also relied on Locane, and then distinguished the facts in Liepe, finding that, unlike in Liepe, Patterson "was traveling at a high rate of speed in a school zone"; "was seen running red lights"; and his actions were "reckless."[3]

On February 14, 2019, the sentencing court found that there was a "rebuttable presumption" for the imposition of consecutive sentences when a defendant causes multiple deaths in an automobile accident, and resentenced Patterson. However, on August 6, 2019, our Supreme Court decided Liepe, and explicitly rejected the notion of a rebuttable presumption in favor of consecutive sentences. 239 N.J. at 377.

The Liepe Court noted that "[l]ike any Yarbough analysis, the sentencing court's determination regarding consecutive and concurrent terms in the vehicular homicide setting turns on a careful evaluation of the specific case." Ibid.

---

[3] State v. Liepe, 453 N.J. Super. 126 (App. Div. 2018).

In a footnote, the <u>Liepe</u> Court added:

> We accordingly disagree with the comment made by the Appellate Division in another case, in which it opined that, in <u>Carey</u>, the Court created a "rebuttable presumption" that a trial court should impose consecutive sentences "when a drunken driver's use of a motor vehicle results in multiple victims."
>
> [<u>Id.</u> at 376 n.5 (quoting <u>Locane</u>, 454 N.J. Super. at 131-32).]

Even though the sentencing court's analysis was undone by <u>Liepe</u>, this alone does not warrant a reversal. The <u>Liepe</u> Court's rejection of <u>Locane</u> was not available to Patterson as an argument at resentencing. Under these circumstances, we review Patterson's argument under the plain error rule, which tells us a decision should only be overturned if it "possesse[s] a clear capacity [of] producing an unjust result." <u>State v. Melvin</u>, 65 N.J. 1, 18 (1974).

We are not persuaded that the sentencing court's use of the now-rejected <u>Locane</u> rebuttable presumption at resentencing had "a clear capacity [to] produc[e] an unjust result." <u>Ibid.</u> When <u>Yarbough</u> guidelines are applied qualitatively to these facts, we find more than sufficient evidence in the record to conclude there was no unjust result. The sentencing court was well within its discretion under <u>Carey</u> to "impose consecutive sentences even though a majority of the <u>Yarbough</u> factors support concurrent sentences." 168 N.J. at 427-28.

## C. Aggravating Factor Three

Patterson next argues that the court erred in finding aggravating factor three because "the court relied heavily on its personal beliefs regarding drug addiction." More specifically, he claims that the sentencing court's personal beliefs regarding drug addiction, unsupported by any evidence, should not have played a role in sentencing. We disagree with the premise of the argument, and we find the sentencing court relied on the record to make its findings.

Aggravating factor three considers "[t]he risk that the defendant will commit another offense . . . ." N.J.S.A. 2C:44-1(a)(3). The sentencing court found it applied in this matter because "of [Patterson]'s . . . testimony acknowledging [his] continued battle with PCP and marijuana." Patterson's pre-sentence report clearly indicates that he began using marijuana at the age of fifteen and PCP at the age of nineteen. His addiction went unaddressed for years despite his family's recommendation that he seek treatment. The court's finding of aggravating factor three was based on competent and credible evidence in the record, including but not limited to Patterson's own admissions.

## D. The Length of Patterson's Consecutive Sentences

Patterson next argues the sentencing court erred in limiting the resentencing to the imposition of consecutive sentences without consideration

21

of the length of the individual terms. We are satisfied that a plain reading of the remand order clearly directs the sentencing court to provide the required statement of reasons in support of its imposition of consecutive sentences. We discern no reversible error in the sentencing court's decision to reject Patterson's argument at resentencing for ten-year terms. We find any remaining arguments defendant has made on appeal to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1875-19